ROGERS, Justice.
 

 The defendant Albert Tate was tried' twice on an information charging that he “did wilfully, maliciously and feloniously blow up and destroy by the- use of an explosive substance, to-wit: dynamite, a certain cotton gin near the Town of Marks-ville, Louisiana,” etc. On the first .trial the jury was unable to reach a verdict, but on the second trial the defendant was convicted, and is now prosecuting this appeal from the conviction.
 

 The appeal comes up to this court on eighteen bills of exception, embracing defendant’s complaints of error committed in the district court. We find it necessary to pass on only three of these complaints. ■
 

 Defendant’s first complaint is that he was convicted on a bill of information which does not set out the violation of any law of this State.
 

 The charge on which defendant is being prosecuted is predicated on section 845 of the Revised Statutes, as amended and reenacted by Act No. 40 of 1921 (Ex.Sess.).
 

 It is defendant’s contention that Act No. 40 of 1921 (Ex.Sess.) was impliedly repealed by Act No. 199 of 1932, and, since the date of the alleged offense was subsequent to the enactment of the later statute, that this prosecution must fall and his conviction and sentence fall with it.
 

 It is the State’s contention that there is no inconsistency between the statutes and that they are different laws on different subjects. That Act No. 40 of 1921 (Ex. Sess.) denounces the blowing up of property by the use of explosives and the crime
 
 *1011
 
 consists in the blowing up of the property. And that Act No. 199 of 1932 denounces the placing of explosives under, against, or near to any building, et cetera, with the intent to destroy or injure the same, and the crime consists in placing the explosives with criminal intent where they cause destruction or injury.
 

 Act No. 40 of 1921 (Ex.Sess.) provides: “Whosoever shall willfully or maliciously blow up or destroy, or attempt, with intent, to blow up or destroy, with dynamite, gunpowder, or any other explosive substance, or destroy or attempt to destroy in .any manner whatsoever, any house, building, ship, vessel, steamboat, or other water craft, private or public dipping vat, or any other public property, shall upon conviction, suffer imprisonment at hard labor for not more than five years.”
 

 Section 3 of Act No. 199 of 1932, which is the pertinent part of the statute, provides : “Any person who places in, upon, under, against or near to any building, car, vessel or structure, gunpowder or any other explosive substance, with intent to destroy, throw down or injure the whole or any part thereof, which explosive substance shall cause the destruction or injury of the property of another, shall be deemed- guilty of a felony and shall be punished by imprisonment in the state prison for not more than twenty-five years.”
 

 The object of both statutes, while expressed somewhat differently in each, appears to ‘ be the same. Thus, when Act No. 40 of 1921 (Ex.Sess.) declares that whoever shall blow up or destroy any building with an explosive substance it assumes, without the necessity of so stating, the placing of the explosive substance by that person. And, when Act No. 199 of 1932 declares that whoever shall place in, upon, under, against, or near to any building an explosive substance which shall cause the destruction of the building, it necessarily means the person who shall destroy the building in the manner described.
 

 The history of the legislation, which we shall review briefly, clearly indicates that the purpose of the Legislature in adopting •Act No. 199 of 1932 was to cover the whole subject-matter of explosive substances.
 

 Beginning our historical review with the Revised Statutes, we find that at the time of their adoption in 1870, and for some years thereafter, the criminal use of explosives was not the subject of legislative action. The Revised Statutes themselves contained a series of sections, beginning with section 841 and ending with section 848, denouncing the criminal use of fire and providing penalties therefor. Some of those sections were subsequently enlarged by legislative action so as to cover also the criminal use of explosives.
 

 The first legislative changes occurred in 1898, when for the first time the criminal use of explosives was denounced. By five separate statutes adopted in that year there were added to the offenses of burning as defined in sections 841, 842, 843, 845, and 846 the cognate offenses of using explosives under the same circumstances.
 
 *1013
 
 Sections 841, 842, 843, and 846 were amended respectively by Acts Nos. 188, 151, 160, and 153 of 1898. Section 845, which is involved in this case, was amended by Act No. 161 of 1898. In the section as amended the attempt to blow up with explosives was placed on a parity with the attempt to burn any house, building, ship, vessel, steamboat, or other watercraft.
 

 Section 842 was also amended by Act No. 126 of 1906, section 843 by Act No. 70 of 1914, section 844 by Act No. 19 of 1917, Ex.Sess., and section 847 by Act No. 114 of 1888, Act No. 144 of 1904, and Act No. 81 of 1906.
 

 By Act No. 73 of 1906, the penalty for burning or blowing up property at nighttime was reduced from death, as provided by Act No. 188 of 1898 amending section 841 of the Revised Statutes, to imprisonment at hard labor not exceeding twenty years.
 

 But in 1908 the Legislature adopted Act No. 263, combining sections 841 and 842, without any reference to them, abolishing the distinction between daytime and nighttime offenses, denouncing them as one offense and restoring the death penalty for its commission. State v. Allison, 146 La. 495, 83 So. 778.
 

 A new grouping of the offenses of setting fire to and blowing up was made in 1918 by the adoption of Acts Nos. 107, 108, and 123. These acts were introduced by the same legislator on the same day and became effective at the same time. They are companion acts and cover all the sections of the Revised Statutes on the subject, except section 844, and, being laws in pari materia, must be read together. In the new grouping the setting fire to buildings and the blowing up of buildings are separated, and they are made distinct offenses. State v. Allison, supra. Thereafter, the Legislature when dealing with the offenses faithfully observed the distinction and invariably treated them as separate crimes.
 

 Thus, in 1928, the Legislature adopted Act No. 211 for the purpose, apparently, of covering the use of fire as a criminal agency. The statute contains six sections and a repealing clause, and embraces every element of the crime of arson as denounced in the previous laws on that subject. Section 6 of the statute was amended by Act No. 186 of 1932. So that Act No. 211 of 1928, as amended, is a comprehensive law on the subject of the criminal use of fire.
 

 In 1921 the Legislature adopted Act No. 40 on the subject of blowing up property, enlarging the offense so as to include the actual blowing up as well as the attempt to do so. And in 1932, by the adoption of Act No. 199, the Legislature created a comprehensive law covering the criminal use of explosives and of other offensive or injurious substances.
 

 Tracing the history of section 845 of the Revised Statutes, which is our particular concern, since it is the section, as amended, under which the State is conducting the prosecution of defendant, we find that the original section dealt exclusively with attempts to burn any house, et cetera. And, after its amendment by
 
 *1015
 
 Act No. 161 of 1898, the section still dealt with the offense only as an attempt, but extended it to the use of explosives.
 

 Act No. 107 of 1918 was enacted as a specific amendment of section 845. The statute continued to deal with the offense as an attempt, but restricted its effect to the attempt to use explosives, excluding the attempt to burn.
 

 Act No. 108 of 1918 was adopted as -an amendment to Act No. 263 of 1908, which, as we have seen, was in effect a consolidation of sections 841 and 842, making the setting fire to and blowing up of houses at night and during the day one offense.
 

 Act No. 108 of 1918, eliminating all reference to the offense of setting fire to, again covered the offense' of blowing up or attempting to blow up any house in which people usually reside, without making any distinction between day and night.
 

 Both statutes, Acts Nos. 107 and 108 of 1918, cover the attempt to use explosives, although under different circumstances.
 

 It will appear, therefore, that section 845 of the Revised Statutes dealing only with the attempt to burn was extended to cover the attempt to use explosives and later was restricted solely to the latter offense. In 1918, after the adoption of Act No. 107, section 845 was in effect merely as a statute covering the attempt to blow up so far as it was not inconsistent with the provision of Act No. 108 covering the attempt to blow up houses in which people usually reside.
 

 The same Legislature which eliminated the offense of setting fire to from those sections of the Revised Statutes adopted another act which covered the offense of arson. That Act "is No. 123 of 1918, which has been superseded by Act No. 211 of 1928, as amended by Act No. 186 of 1932.
 

 Just as the Legislature by Act No. 211 of 1928, as amended, has apparently covered the whole subject matter of the criminal use or attempted use of fire so by Act No. 199 of 1932 has it apparently covered the whole subject matter of the criminal use or attempted use of explosives. Both statutes contain repealing clauses.
 

 While it is true .that repeals by implication are not favored, it is equally true that, where .the obvious purpose of the law is to cover the whole subject matter therein dealt with, it supersedes all pri- or pertinent legislation. State v. Henderson, 120 La. 535, 45 So. 430; Wood v. Bateman, 149 La. 290, 88 So. 824; Connell v. Commission Council, 153 La. 788, 96 So. 657; State v. McClellan, 155 La. 37, 98 So. 748, 31 A.L.R. 527; Knight v. School Board, 164 La. 482, 114 So. 104; St. Tammany Homestead Ass’n v. Bowers, 183 La. 987, 165 So. 176.
 

 Our conclusion is that it was the intention of the Legislature in enacting Act No. 199 of 1932 to revise the entire matter of the criminal use or attempted use of explosives as contained in the pri- or laws on that subject, to make such changes in the existing law as they thought best and to substitute the new for the old law; and that the new law, being complete in itself, repealed all other laws on the subject covered by its provisions.
 

 
 *1017
 
 Defendant’s next complaint arises from his unsuccessful attempt to recuse the district attorney.
 

 Defendant moved for the recusation, alleging that under article 310 of the Code of Criminal Procedure the district attorney had a personal interest adverse 'to that of the prosecution, in that it was his legal duty to protect the innocent as well as to prosecute the guilty, which he could not do because he was associated as an attorney in a series of civil suits against the defendant, the outcome of which depended upon his success in convicting the defendant.
 

 The record discloses that, while certain preliminary matters growing out of the charge against defendant were being acted upon in the district court, a number of insurance companies brought suit against defendant personally and as liquidator, for the recovery of insurance paid on the loss by fire of the Mansura Cotton Mill, on the ground that defendant had caused the mill to be set on fire in order to defraud the companies and collect the amounts due on the policies, in all of which suits the district attorney appeared as the local counsel for plaintiffs.
 

 Subsequent to the first trial, which resulted in a mistrial, and prior to the second trial, which resulted in defendant’s conviction, three suits were brought against defendant for the recovery of damages arising from the dynamiting of certain cotton gins. Although he does not appear of record, it is charged by defendant that the district attorney admitted to his attorneys that he is one of the attorneys, on a contingent basis, in those suits, which charge the district attorney has not denied.
 

 The district attorney contends that the statutory inhibition invoked by defendant could only be applied if he had an interest adverse to the prosecution; that is, to the public. Plis position, briefly stated, is that he is conducting the prosecution as the representative of the public, which has been injured by defendant’s alleged criminal act, and not of any private person, who may have been also injured by the same act, the remedies accorded to each of the injured parties for the wrong suffered, although they may be concurrent and operate simultaneously, being wholly distinct.
 

 We think defendant’s complaint that the district attorney should have been recused is well founded.
 

 The trial judge, in sustaining the contention of the district attorney, assigned the following as the reasons therefor, viz.:
 

 “While it may be a fact that the district attorney is associate counsel in civil suits against the defendant, Tate, and the liquidators of the Mansura Cotton Oil Mill, the subject matter thereof is correlated to the prosecution in this cause, and, if anything, makes the district attorney all the more zealous in the prosecution of this cause. It cannot be said that the district attorney in this cause has an interest adverse to that of the prosecution solely on the ground that he is engaged in condemning him in a monied judgment in a civil cause.”
 

 
 *1019
 
 The state, which he represents, does not demand that a district attorney shall be overzealous in the performance of his duties. All that it requires is that the zeal he displays, although active, shall be reasonable. In his efforts to procure conviction, a district attorney must be animated by his sense of public duty and not stimulated by his hope of private gain.
 

 In conducting a criminal case the prosecuting attorney must be fair and impartial, and see that defendant is not deprived of any constitutional or statutory right, because he is a quasi judicial officer. 18 C.J. § 42, pp. 1315, 1316.
 

 This rule, founded on justice and fair dealing, we think is intended not only to restrain the offer of illegal evidence or the violation of the orderly rules of procedure by prosecuting officers, but also to require their recusation in those cases in which their interest, directly or indirectly, may be such as to cause them to sacrifice impartial justice to personal advantage.
 

 The statutory requirement that the district attorney shall be recused where “he shall have a personal interest adverse to that of the prosecution” is broad enough to cover a case where he is of counsel in a civil action against the accused, based substantially on the same'or on closely related facts.
 

 The district attorney is a quasi judicial officer. He represents the State, and the State demands no victims. It seeks justice only, equal and impartial justice, and it is as much the duty of the district attorney to see that no innocent man suffers as it is to see that no guilty man escapes. Com. v. Bubnis, 197 Pa. 542, 47 A. 748; Com. v. Nicely, 130 Pa. 261, 18 A. 737. Therefore he should not be involved or interested in any extrinsic matters which might, consciously or unconsciously, impair or destroy his power to conduct the accused’s trial fairly and impartially.
 

 As shown by his statement per curiam, the trial judge found that the subject matter of the civil suits against the defendant, personally and as liquidator, in which the district attorney is associated as counsel for the plaintiffs, is related to the prosecution of defendant. We think the finding is correct. The subject matter of the litigation is so closely connected with the subject matter of the criminal prosecution that its successful event is dependent largely, if not entirely, upon defendant’s conviction.
 

 We do not think that State v. Boasberg, 124 La. 289, 50 So. 162, cited by the State, is in point. There the district attorney, admittedly without any personal interest in the litigation, faced by the public demand for a prosecution, permitted himself to be recused and special counsel to be appointed to conduct the prosecution, in which he did not believe. This court refused to permit the recusation to stand, on the ground that the cause assigned therefor did not fall within the provisions of the statute.
 

 The case - of State v. Perkins, 124 La. 947, 50 So. 805, is more in point. In that case, the judge of the district court, who as an attorney had been previously consulted in civil proceedings on the matters forming the basis of the criminal prose
 
 *1021
 
 cution, refused to recuse himself. But this court ordered his recusation, holding that, while he had been consulted on a civil remedy, the basic matter was the same as the criminal prosecution. And the court, while expressing its confidence in his integrity and impartiality, declared that the policy of the law would be best subserved by the recusation of the trial judge. State v. Perkins, 124 La. 947, 50 So. 805.
 

 And so, in this case, while we are satisfied of the good faith of the district attorney in opposing the demand of defendant for his recusation and of the sincerity of his belief that he has impartially discharged the duties of his office, we think that the policy of the law would be best subserved by his recusation.
 

 The third and last complaint of the defendant we feel called up to notice is his complaint that the trial judge, on objection of the State, refused to permit the testimony of certain witnesses offered by him to support his motion to quash the venire out of which the petit jury was drawn, on the ground that more than 50 per cent, of the names of which it was composed, and also more than 50 per cent, of the names on the venire out of which the petit jury was composed, were selected from lists furnished by the district attorney or by some other person at his instigation.
 

 The witnesses whose testimony was excluded were two jury commissioners, a deputy sheriff, and the two witnesses to the drawing of the jury complained of. The testimony of the jury commissioners was excluded on the ground that they could not impeach their own acts, and that of the other witnesses was excluded on the ground that the law does not prescribe the source from which the jury commission shall derive its knowledge of who are qualified to serve as jurors.
 

 The action of the trial judge in excluding the testimony of the two jury commissioners was correct, since a jury commissioner cannot be heard to contradict or impeach the proces verbal made by
 
 him
 
 under the sanctity of his oath. State v. Johnson, 116 La. 856, 41 So. 117.
 

 But we see no reason for his excluding the testimony of the other witnesses offered by defendant to support the allegations of his motion to quash. The reason assigned, that the law does not prescribe the source from which the jury commission shall obtain the names, is not sufficient for its exclusion.
 

 While the law does not restrict the commissioners to any particular mode of making their selections, it does not, and cannot, sanction their delegation of that power to the counsel for either 'of the parties litigant. State v. Newhouse, 29 La.Ann. 824.
 

 Nor can the ruling of the trial judge excluding the testimony be sustained on the ground that' no fraud or wrong causing defendant irreparable injury was committed by the jury commissioners.
 

 The defendant, in his motion to quash, has alleged that more than one-half of the names' placed in the general venire box, as well as more than one-half of the names
 
 *1023
 
 placed in the tales jui'y box, were selected by the district attorney. If this be true, it constitutes one of those irregularities so gross, so at variance with the strict mandate of the law, that it amounts to a wrong per se on those affected by it, and is an injury so apparent, and, to those who have reason to complain of it and do complain of it, so great, that they need, in the way of showing injury, do nothing more than allege injury. State v. Love, 106 La. 658, 31 So. 289.
 

 For the reasons assigned, the conviction and sentence herein appealed from are annulled, and the defendant is dischax-ged.
 

 ODOM, J., concux's in the decree on the ground that the venire should have been quashed, and dissents as to the other grounds.
 

 O’NIELL, C. J., concurs in the riding that the district attorney should have been recused.