On Rehearing.
 

 FOURNET, Justice
 

 (concurring).
 

 The Hon. Eugene Stanley, Attorney General of Louisiana, is appealing from a judgment of the Twenty-first Judicial District Court for the Parish of Tangipahoa enjoining him (1) from superseding that district’s attorney in three criminal cases before that court, i.' e., the state’s case against Jerome A. Hayes, individually, wherein he 1 is charged with slander, and the state’s two cases against Jerome A. Hayes as the Supervisor of Public Accounts and his deputies, wherein they are jointly charged with conspiracy to destroy and the destruction of public records; and (2) from superseding the district attorney as the legal adviser of the grand jury, then investigating complaints relative to all of the public institutions and offices in that parish. These were eleven in number: (1) The sheriff’s office, (2) the clerk of court’s office, (3) the police jury, (4) the school board, (5) the assessor’s office, (6) Southeastern Louisiana College, (7) the Florida Parishes Hospital, (8) the Louisiana Milk Commission, (9) Camp Moore Cemetery, (10) the Louisiana Conservation Station in that parish, and (11) the Louisiana Highway Commission’s work in that parish.
 

 The injunction was sought on the basis that the attorney general’s supersession of the district attorney under Act No. 24 of the First Extra Session of 1934 was unwarranted and illegal because of the act’s unconstitutionality, and, in the alternative, that if the act were held to be constitutional, then that the only time the attorney general can supersede the district attorney is when it is in the interest of the state, which was not the case here for the reason that the district attorney was at all times ready and willing to protect the interest of the state and to carry out faithfully the duties of his office, as provided by law; that although the attorney general did not assign any reason for his act of supersession, his
 
 real
 
 motive in this case, as in his wholesale abuses in oppressively superseding other district attorneys throughout the state not of his political faction, was to help his political affiliates.
 

 The attorney general defended the case on the ground that the court is without
 
 *159
 
 power or jurisdiction to inquire into the motives or sufficiency of the reasons which prompt the attorney general in superseding the district attorney.
 

 The mandatory duties imposed upon the attorney general and his assistants under Section 56 of Article VII of the Constitution of 1921, where their qualifications are fixed, is that they shall “attend to, and have charge of all legal matters in which the State has an interest,” and “shall exercise supervision over the several district attorneys throughout the State.” In this same section he is given the power and authority, when it is for the protection of the rights and interest of the state, to institute and prosecute any civil or criminal proceeding or intervene in any such proceeding already pending.
 

 Our law makers, in adopting the Code of Criminal Procedure in 1928, defined the powers of the district attorney to be: “Subject to the supervision of the Attorney-General, as hereinafter provided, the District Attorney shall have entire charge and control of every criminal prosecution instituted or pending in any parish wherein he is district attorney, and shall determine whom, when, and how he shall prosecute; provided, that every district attorney shall have the right to employ or to accept the assistance in the conduct of any criminal case of such counsel as to him may seem fit.” Article 17. In defining the duties and powers of the attorney general in Article 23, in his relation to criminal proceedings, they, in effect, adopted the language of the constitution above referred to.
 

 By Act
 
 No.' 24
 
 of the First Extra Session of 1934, the legislature amended Articles 17 and 156 of the Code of Criminal Procedure by adding to each article a provision granting to the attorney general the additional power relieving, supplanting, and superseding the district attorney in any proceeding instituted by the district attorney when he deemed it necessary for the protection of the rights and interest of the state, and providing further that “the discretion of the Attorney General under this Article shall not be questioned or inquired into by any court.” Prior to its amendment, Article-156 had made it the mandatory duty of district judges and attorneys to inquire into any crime that might come within their knowledge where no complaint thereof.had been made; so, by its amendment, this power was taken away from the district judge and granted to the attorney general, along with the above power of supersession.
 

 It is obvious from a mere reading of Act No. 24 of the First Extra Session of 1934, therefore, that it was the intention of the legislature in enacting it to give authority and power to the attorney general that had not theretofore been authorized under the codal articles. But this object is not. indicated in its title, where it is stated that its object is “To amend and re-enact Articles 17 and 156 of the Code of Criminal Procedure.” Such amendment and re-enactment is, of course, merely incidental to and the means of obtaining the object for which it was enacted, that is, to grant enlarged powers ■ to the attorney general. It therefore follows that this is in direct contravention of Section 16 of Article III of the Constitution, providing that “Every
 
 *161
 
 law enacted by the Legislature shall embrace but one object, and shall have a title indicative of such object.”
 

 If the only object for which the act was enacted is, as stated in its title, to amend these two articles of the criminal procedural code, then it is equally obvious that it is also violative of Section 16 of Article III of the Constitution for the act then would have a dual object, that is, the amendment and re-enactment of two entirely distinct and disassociated articles of the Code of Criminal Procedure, Article 17, found under Title IV entitled “Of District Attorneys and the Attorney General,” and Article 156, found under Title XV headed “Of Committing Magistrates and Preliminary Examinations.”
 

 It is also clear that the power given the attorney general in Act No. 24 of the First Extra Session of 1934 extends beyond and exceeds the limitation placed on his power in Section 56 of Article VII of the Constitution, for he is there authorized to institute and prosecute civil and criminal proceedings or intervene in those already pending only in those instances where it is necessary for the protection of the rights and interest of the state.
 

 Furthermore, the declaration in the act that the discretion of the attorney general in his supersession of the district attorney cannot be questioned or inquired into by any court is in direct contravention of Section 6 of Article I of the Constitution guaranteeing that all courts shall be open to all persons for the speedy redress of wrongs. While it is the accepted rule that courts will not interfere with the actions of public officials in the performance of their administrative duties, there is an equally well accepted and recognized exception to this rule, that is, that when a public official in performing his official duties acts so capriciously and arbitrarily he abuses his discretion and encroaches upon the rights of others, the persons so injured are given a right of redress in the courts under the express guarantees of the due process provisions of our constitution and that of the United States.
 

 This court recognized this exception to the rule when, in the case of State v. Major, 181 La. 822, 160 So. 425, 427, it said:
 
 “It is not necessary to decide now whether an abuse of the discretion which is vested in the Attorney General might be inquired into by the courts. There is no showing of abuse of discretion in this case.”
 
 And the attorney general has himself recognized that his discretion in superseding district attorneys is subject to review by the courts, for, in testifying in this case, he stated he knew of no law that gave the attorney general the right to take charge of the district attorney’s office and that his understanding and interpretation of Act No. 24 of the First Extra Session of 1934 was that it allowed the attorney general to supersede the district attorney
 
 “in specific cases for the protection of the rights and interest of the State”
 
 and that if he abused the power thus given him,
 
 “the Supreme Court would stop him.”
 
 (All italics the author’s.)
 

 The large mass of testimony in the record conclusively shows the abuses indulged in by the attorney general in his superses
 
 *163
 
 sion of the district attorney in this case as well as in his other wholesale supersessions of the district attorneys' throughout the state. The judge ad hoc, the Hon. Allen B. Pierson, appointed to try the case because of the relationship existing between the district judge and the district attorney (brothers-in-law), after reviewing and analyzing the evidence, concluded, on the merits of the case, that “this attempted supersession is not based on sound legal discretion and that such supersession, if allowed, would be a gross arbitrary abuse of a discretionary power which should be jealously guarded and kept free of personal feelings and politics.” In discussing these abuses of the attorney general in superseding other district attorneys throughout the state whenever they were politically opposed to him and his faction, the judge ad hoc pointed out that “The entire record in this case is teeming with testimony which tends to show that the purpose of supersession in other parishes was largely for political reasons.” To substantiate these statements, he pointed out:
 

 “A great mass of testimony and documentary evidence was placed in the record growing out of the supersession by the Attorney General of District Attorney Hundley of Rapides Parish. It was proven that some two hundred seventy-six indictments were returned by the Rapides Grand Jury while a Special Assistant of the Attorney General was legal adviser of the Grand Jury and that a great majority of these indictments were against men prominent in politics and politically opposed to the Attorney General. Be that as it may, it was likewise proven that not a single one of the two hundred seventy-six indictments had ever been tried, in fact, not a single person charged has even been arraigned. For example, some forty-seven of the Rapides Grand Jury indictments were returned against the Mayor, V. V. Lamkin, and were kept pending under the sole charge of the Attorney General during an election in which Mayor Lamkin was defeated for re-election. After his defeat the Attorney General proceeded to nolle prosequi some of the charges and stated on the witness stand that he expected to nolle prosequi others still pending against Mayor Lamkin. The Mayor was never arraigned on any of the indictments.
 

 “In the case of State Versus Sheriff Derrick of Sabine Parish, it was proven conclusively that the prosecution was instituted by a bill of information filed by the Attorney General personally; the charge being that the Sheriff had accepted a bribe from bootleggers. The only two witnesses against the Sheriff were proven to be notorious bootleggers and law violators (Transcript — Page 149), viz: Asa E. Drew and Dave Moody. It was shown that they made a trip to Baton Rouge and consulted with the Attorney General’s office and that after the Derrick case had been concluded and the Sheriff acquitted, that the Attorney General, through one of his Special Assistants proceeded to nolle prosequi some ten pending indictments against these bootleggers. The record further shows that J. Reuel Boone, Esq. was assisting the Attorney General’s office in the prosecution of Sheriff Derrick and was also acting as attorney for Asa Ei Drew, bootlegger.”
 

 
 *165
 
 But it is the contention of the attorney general that we cannot review his actions in superseding district attorneys other than the one now under consideration. The attorney general, although protesting that his actions in this case, as well as in all of the cases where he or his assistants • superseded district attorneys, were in the interest of the state, admitted on the witness stand during the course of his examination of this case, that he superseded the district attorney solely because he wanted to see Jerome A. Hayes get justice and believe he “would get better justice out of the attorney general’s office.” But as found by the judge ad hoc, in which he is amply supported by the evidence, including the attorney general’s own admission, in this instance he did not supersede the district attorney for the purpose of protecting the state’s interest, but only for the purpose of protecting Jerome A. Hayes. The judge ad hoc has also pointed out, that it is equally obvious that the attorney general’s reason for seeking to become the legal adviser of the grand jury in Tangipahoa parish was so that he might take charge of and have control over all of the indictments they might return with respect to the public offices and institutions Jerome A. Hayes was then investigating in the parish and, in this way, effectively and literally tie the hands of the district attorney and render the functioning of his office an impossibility.
 

 One of the rules of evidence is that one’s motive in doing an act may be shown by similar acts on his part. The most serious and important issue in this case is whether the attorney general’s supersession of the district attorney was an abuse of the authority vested in him by law, consequently his actions in superseding other district attorneys in the state are admissible to show that his motives were not in the interest of the state but arbitrary and capricious.
 

 This case furnishes its own very apt example of the reason why the action of the attorney general in exercising his discretion in matters of supersession should be reviewable by the courts. Although the attorney general purportedly superseded the district attorney in this instance in the interest of the state (to see that Jerome A. Hayes receive justice) the record shows he contributed his pro-rata share, along with several other state officials, of the amount needed to finance Hayes’s appearance bond in these very cases which he was prosecuting for the state against Hayes and to-which end he had superseded the district attorney; and he appeared in court as the personal representative of Hayes (the very man against whom the grand jury returned indictments and whom the attorney general superseded the district attorney to prosecute) in order - to prevent the grand jury (also represented by the attorney general because of his general supersession of the district attorney) from securing the report Hayes had made of his investigation of the public offices and institutions of Tangipahoa parish.
 

 The attorney general’s supersession of the district attorney in Sabine parish, referred to by the judge ad hoc in his opinion, furnishes another illustration of the arbitrary and capricious abuse of the pow
 
 *167
 
 ers of his office. In that case, while he was acting as the legal adviser of the grand jury there, the jury returned an indictment against Sheriff Derrick of • Sabine parish charging that he had accepted a bribe on the testimony of two notorious bootleggers and law violators. The attorney general, apparently content that the indictment alone would serve its purpose, made no effort to prosecute Sheriff Derrick until the sheriff himself insisted that he be tried. He was acquitted by a jury of his peers within a few minutes after the trial began, and, subsequently, indictments were returned against the two prosecuting witnesses, charging that' they had been guilty of perjury in making their complaint and testimony against the sheriff. The attorney general, charged specifically under the constitution with acting solely as the representative of the state, then, in order to extricate these prize witnesses from the trap they had themselves set, appeared in court through one of his assistants as the attorney for these bootleggers and law violators and filed there a motion to have the indictments charging them with perjury quashed.
 

 It is interesting to note that when the attorney general sought to explain to this court, during his oral argument, why he had never prosecuted any of the several hundred indictments returned by other grand juries throughout the state during the periods when he or one of his assistants was acting as the grand jury’s legal adviser, he stated that these indictments were returned by grand juries, like those made by Jerome A. Hayes, upon “wild charges” and were based on such flimsy evidence that it would have been impossible for him (the attorney general) to substantiate them in a court of law. This was an admission on the part of the attorney general of the abuses to which he was lending his office. He admits knowing that the indictments were wholly unfounded — were not worth the paper they were written on, so to speak — and, although he was unable to control the action of the grand jury returning such worthless indictments, being thus well aware that they were unfounded because either he or one of his assistants acted as the grand jury’s legal adviser when they were returned, it became his duty, in the interest of justice and in all fairness to those falsely charged, to immediately have these unsupported indictments nolle prossed and not delay taking such action until the indictments had served their purpose of aiding in the defeat of those politically opposed to him and his- faction.
 

 It is impossible to conceive in what manner the attorney general was acting in the interest of the state in any of the instances where he superseded the various politically opposed district attorneys throughout the state. As was succinctly pointed out by this court in the case of State v. Tate, 185 La. 1006, 171 So. 108, 112: “The district attorney is a quasi judicial officer. He represents the State, and the State demands no victims. It seeks justice only, equal and impartial justice, and it is as much the duty of the district attorney to see that no innocent man suffers as it is to see that no guilty man escapes. * * * Therefore he should not be involved or interested in any extrinsic matters.’ which
 
 *169
 
 might, consciously or unconsciously, impair or destroy his power to conduct the accused’s trial fairly and impartially.”
 

 It is my opinion, therefore, that the judge ad hoc, having properly concluded the attorney general’s supersession of the ■district attorney in this case was capricious, arbitrary and not in the interest of the state, correctly enjoined him from superseding the district attorney in the prosecution of the various matters involved in this proceeding and representing the grand jury and that his judgment should be affirmed.