# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE

NEWS RELEASE #031

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **27th day of June, 2025** are as follows:

**PER CURIAM:**

2021-KP-00812 *STATE EX REL. DARRELL J. ROBINSON    VS.    DARREL VANNOY, WARDEN, LOUISIANA STATE PENITENTIARY, ANGOLA, LOUISIANA (Parish of Rapides)*

AFFIRMED. SEE PER CURIAM.

Weimer, C.J., dissents and assigns reasons.
Griffin, J., dissents and assigns reasons.
Guidry, J., dissents and assigns reasons.

# SUPREME COURT OF LOUISIANA

## No. 2021-KP-00812

## STATE EX REL. DARRELL J. ROBINSON

## VS.

## DARREL VANNOY, WARDEN, LOUISIANA STATE PENITENTIARY, ANGOLA, LOUISIANA

On Supervisory Writ to the 9th Judicial District Court, Parish of Rapides

ON SECOND REHEARING

**PER CURIAM.**

We granted rehearing in this matter to consider the case in light of the recent decision of the United States Supreme Court in *Glossip v. Oklahoma*, 604 U.S. 145 S.Ct. 612, 221 L.Ed.2d 90 (2025). *State ex rel. Robinson v. Vannoy*, 21-0812 (La. 3/20/25), 403 So. 3d 530 (granting rehearing). After careful consideration, the Court finds that the holding in *Glossip* does not alter the outcome of our prior decision. We therefore affirm our opinion rendered on December 13, 2024, *State ex rel. Robinson v. Vannoy*, 21-812 (La. 12/13/24), 397 So. 3d 333.

**AFFIRMED**.

# SUPREME COURT OF LOUISIANA

## No. 2021-KP-00812

## STATE EX REL. DARRELL J. ROBINSON

## VS.

## DARRELL VANNOY, WARDEN, LOUISIANA STATE PENITENTIARY, ANGOLA, LOUISIANA

*On Supervisory Writ to the 9ᵗʰ Judicial District Court, Parish of Rapides*

On Second Rehearing

**WEIMER, C. J.,** dissenting.

Although "a foolish consistency is the hobgoblin of little minds,"[1] life and death cases demand that a decision be rendered with certainty. The fluctuation of decisions rendered by some of those involved in handling and deciding this case demonstrates the inconsistency in the result, which began with the post-conviction stipulation and has continued throughout the extended time this matter has, unfortunately, lingered in this court. With so many minds being changed, can there be any confidence in this outcome?

I respectfully dissent from the affirmation of defendant's conviction and sentence. My reasons for vacating both defendant's conviction and sentence are fully set forth in the original opinion in this matter and in my dissent from the decision on first rehearing. Those reasons are adopted here and need not be repeated in detail. I write primarily to emphasize that this is a case involving both **Brady**[2] and

---

[1] Ralph Waldo Emerson, "Self-Reliance," Essays: First Series (1841).

[2] **Brady v. Maryland**, 373 U.S. 83 (1963).

**Napue/Giglio**[3] violations, and under the law applicable to both type of violations, the State's evidentiary omissions do not pass constitutional muster.

Insofar as the **Brady** violations are concerned, I believe it is important to underscore two points. First, this case does not involve one or two isolated instances of evidentiary suppression, but many–so many, in fact, that it took nine pages to document them all in the Joint Stipulation of Facts signed by both the assistant district attorney then prosecuting the case and by the defense, presented to the district court, and entered into evidence, along with the associated exhibits. While a substituted post-conviction prosecutor later unilaterally attempted to withdraw from the Joint Stipulation, that stipulation remains of record, and documents the plethora of evidence that was withheld by the prosecution, *to which the State stipulated*. This stipulation is significant because it memorializes the factual basis of the motion to vacate submitted in conjunction with the Joint Stipulation, a factual basis that the trial of the post-conviction claims did not refute or disprove. This matter is also unique because the original prosecutor, after retiring, became embroiled in the case, in effect intervening in the proceedings in a highly irregular and potentially unprecedented move.

Given the multiple evidentiary omissions established by the Joint Stipulation and by the evidentiary hearing that followed, the second point that bears emphasis is the standard for determining whether those omissions rise to the level of a constitutional due process violation. That standard involves the materiality determination, which was recently succinctly summarized by the U.S. Fifth Circuit Court of Appeals as follows:

---

[3] **Napue v. People of the State of Illinois**, 360 U.S. 264 (1959), and **Giglio v. United States**, 405 U.S. 150 (1972).

As to the materiality element, "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." The touchstone of the materiality analysis is "a reasonable probability of a different result," such that "the government's evidentiary suppression undermines confidence in the outcome of the trial." The **Brady** materiality analysis is "*not* considered in the light of the probability of acquittal" and instead simply asks whether there is a reasonable probability that the resulting proceeding "would have been different." Materiality "is not a sufficiency of evidence test."

**Holberg v. Guerrero**, 130 F.4th 493, 500-501 (5th Cir. 2025) (quoting **United States v. Bagley**, 473 U.S. 667, 682 (1985); **Kyles v. Whitley**, 514 U.S. 419, 434 (1995); **Floyd v. Vannoy**, 894 F.3d 143, 166 (5th Cir. 2018); **Youngblood v. West Virginia**, 547 U.S. 867, 870 (2006)).

Moreover, and most importantly for this case, in determining whether the evidentiary suppression undermines confidence in the verdict and is therefore material, the cumulative effect of the suppressed evidence must be considered. **Kyles**, 514 U.S. at 436; **State v. Marshall**, 94-0461, p. 15 (La. 9/5/95), 660 So.2d 819, 826 ("It is not enough for reviewing courts to consider the impact of each item of exculpatory evidence standing alone; the cumulative effect of the suppressed evidence must be considered."). Applying this standard to the record evidence, I continue to adhere to my original opinion that the multiple suppressions that occurred below, considered cumulatively and not item by item, can reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict and require a new trial. The requirement of a new trial is underscored by the previously referenced nine pages stipulating evidentiary violations.

Insofar as the **Napue/Giglio** violation is concerned–which in this case consists of evidence of an understanding between jailhouse informant Leroy Goodspeed and

the State with regard to Goodspeed's pending charges in Lafayette Parish, and of the State's failure to correct Goodspeed's testimony that no such understanding or agreement existed, or that Goodspeed had received favorable treatment even prior to his testimony–a slightly different materiality determination is required:

> In **Napue v. Illinois**, this Court held that a conviction knowingly "obtained through use of false evidence" violates the Fourteenth Amendment's Due Process Clause. 360 U.S. at 269, 79 S.Ct. 1173. To establish a **Napue** violation, a defendant must show that the prosecution knowingly solicited false testimony or knowingly allowed it "to go uncorrected when it appear[ed]." **Ibid.** If the defendant makes that showing, a new trial is warranted so long as the false testimony "may have had an effect on the outcome of the trial," **id.**, at 272, 79 S.Ct. 1173–that is, if it " 'in any reasonable likelihood [could] have affected the judgment of the jury.'" **Giglio v. United States**, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) (quoting **Napue**, 360 U.S. at 271, 79 S.Ct. 1173)). In effect, this materiality standard requires " ' "the beneficiary of [the] constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." ' " **United States v. Bagley**, 473 U.S. 667, 680, n.9, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) (quoting **Chapman v. California**, 368 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)).

**Glossip v. Oklahoma**, 604 U.S. ___ (2025); 145 S.Ct. 612, 626-627.

Because Goodspeed's testimony regarding an alleged jailhouse confession was the *only* direct evidence indicating defendant was the actual perpetrator of the crime and Goodspeed's credibility was therefore critical, I remain convinced that the State did not meet its obligation, under **Napue/Giglio**, as recently affirmed by the Supreme Court in **Glossip**, of establishing beyond a reasonable doubt that the **Napue/Giglio** violation did not contribute to the verdict. Under either **Brady** or **Napue/Giglio**, or both, I remain convinced that defendant is entitled to a new trial.

A defendant who is properly tried and convicted of first degree murder may face the death penalty. Had my original majority opinion remained the decision of this court, this case could have been re-tried, and capital punishment would have remained an option for the prosecution. The various and changing opinions in this

4

matter, which will now result in defendant's death sentence being affirmed, stresses the importance of certainty in our opinions and the need to ensure there was a fair trial. But there is no confidence here, where the reversals and changes of hearts are not a result of new facts or changes in the law, but a change of opinion. The fact that opinions of some of those deciding the case have changed so often in and of itself is proof that there is a question about the validity of the trial and a lack of confidence in the verdict itself. Our justice system appears arbitrary in a case where exactitude and certainty are of the utmost importance because the penalty is irrevocable.

The crime committed in this case is absolutely horrific. But the horrific nature of a crime is not the constitutional touchstone; fairness as required by the due process clause, is the touchstone. The individual who is accused of this crime, or of any crime, is entitled by the rule of law to a trial without pages and pages of stipulated evidentiary omissions that, considered cumulatively, violate the guarantee of the due process clause of both the federal and state constitutions. In each case, no matter how horrific, the accused is entitled to a fair trial, free of multiple constitutional violations.

# SUPREME COURT OF LOUISIANA

## No. 2021-KP-00812

## STATE EX REL. DARRELL J. ROBINSON

## VS.

## DARREL VANNOY, WARDEN, LOUISIANA STATE PENITENTIARY, ANGOLA, LOUISIANA

*On Supervisory Writ to the 9th Judicial District Court, Parish of Rapides*

## On Second Rehearing

**GRIFFIN, J., dissents and assigns reasons.**

I maintain my position that defendant's conviction should be vacated for the reasons articulated by Chief Justice Weimer. *See State ex rel. Robinson v. Vannoy*, 21-0812 (La. 1/26/24), 378 So.3d 11; *State ex rel. Robinson v. Vannoy*, 21-0812 (La. 12/13/24), 397 So.3d 333 ("*Robinson III*") (Weimer, C.J., dissenting).

It is undisputed that the State failed to disclose exculpatory evidence. There is also no doubt the resulting prejudice to a defendant is weighed under a cumulative evaluation of all the evidence as recently reaffirmed by the United States Supreme Court in *Glossip v. Oklahoma*, 604 U.S. --- (2025), 145 S.Ct. 612, 629 (citing *Kyles v. Whitley*, 514 U.S. 419, 115 S.Ct. 1555 (1995)) – a jurisprudential reality which the State ignores. The State further surmises this Court must necessarily infer the State's witnesses – including district attorneys – committed perjury for the improperly undisclosed evidence to be material. That is incorrect. Credibility determinations are for the jury. A judge, however, has a duty to enforce constitutionally guaranteed safeguards to protect the process in which a jury decides a defendant's fate. So, too, a "prosecuting attorney must be fair and impartial, and

see that [a] defendant is not deprived of any constitutional or statutory right."[1] *State v. Tate*, 185 La. 1006, 1019, 171 So. 108, 112 (1936). It is far from a radical or novel proposition to think "it more dangerous that even a guilty person should be punished without the forms of law, than that he should escape." *From Thomas Jefferson to William Carmichael, 3 June 1788*, THE PAPERS OF THOMAS JEFFERSON, vol. 13, March – 7 October 1788, ed. Julian P. Boyd, Princeton: Princeton University Press, 1956, pp. 229-35

Four people – including an infant – were horrifically murdered. They and their families deserve justice. But justice and due process are not meted out on a sliding scale inversely proportional to society's distaste for the accused or the circumstances of the crime.[2] "The question here is not whether a terrible crime was committed, but whether, in light of the undisclosed evidence, the defendant received a fair trial … resulting in a verdict worthy of confidence." *Robinson III*, 21-0812, 397 So.3d at 384 (Weimer, C.J., dissenting). I find he did not.

---

[1] A district attorney "represents the State, and the State demands no victims. It seeks justice only, equal and impartial justice, and it is as much the duty of the district attorney to see that no innocent man suffers as it is to see that no guilty man escapes." *Tate*, *supra*.

[2] Neither should the imperative to correct the deprivation of a constitutionally guaranteed right cede to reliance interests and administrative concerns. *See State v. Reddick*, 21-1893 (La. 10/21/22), 351 So.3d 273, 297 (Griffin, J., dissenting). Practical difficulties with retrying this case decades later are ultimately attributable to the State by its initial failure to disclose to the defendant the evidence at issue.

**SUPREME COURT OF LOUISIANA**

**No. 2021-KP-00812**

**STATE EX REL. DARRELL J. ROBINSON**

**VS.**

**DARREL VANNOY, WARDEN, LOUISIANA STATE PENITENTIARY, ANGOLA, LOUISIANA**

On Supervisory Writ to the 9th Judicial District Court, Parish of Rapides

**On Second Rehearing**

**GUIDRY, J.,** dissents and assigns reasons.

Based on the credible and substantial evidence presented in the postconviction proceedings and for the reasons articulated by Chief Justice Weimer in State ex rel. Robinson v. Vannoy, 21-00812 (La. 1/26/24), 378 So. 3d 11, 17-45, opinion vacated and superseded on reh'g, 21-00812 (La. 12/13/24), 397 So. 3d 333, reh'g granted, 21-00812 (La. 3/20/25), 403 So. 3d 530 and in State ex rel. Robinson v. Vannoy, 21-00812, p. 63 (La. 12/13/24), 397 So. 3d 333, 383-88 (Weimer, C.J., dissenting), reh'g granted, 21-00812 (La. 3/20/25), 403 So. 3d 530, the defendant is entitled to a new trial wherein all the relevant evidence, including that wrongfully withheld by the prosecution, can be presented to and be considered by the jury.

The murders committed are without question horrible, senseless, and unjustifiable. There should be punishment meted out to the person who committed the murders, but that decision should be determined by a jury, beyond a reasonable doubt, based on all available and relevant evidence.

This purely circumstantial evidence case turns on doubt and whether the newly discovered evidence of certain beneficial treatment received by one of the prosecution's key witnesses would be sufficient to tip the scale not just on on the determination of sentencing, but the determination of guilt. The prosecution and

some members of this court contend that the newly discovered evidence does not rise to the level of a violation of the legal principles espoused in <u>Brady v. Maryland</u>, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), <u>Napue v. People of State of Illinois</u>, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959), <u>Giglio v. United States</u>, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), and <u>Kyles v. Whitley</u>, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) by improperly assessing the materiality of the postconviction evidence separately rather than cumulatively as required by the foregoing cases. While the majority contends that the prosecution's case was strong enough to convict the defendant even without the highly contested testimony of Leroy Goodspeed, the fact that the prosecution offered Goodspeed's testimony indicates that his testimony was of value to its case. Moreover, in combination with the several items of relevant and critical evidence that even the majority acknowledges the prosecution withheld, the cumulative effect dictates a new trial wherein the jury, rather than the majority, can assess the weight and importance of the additional evidence in determining the defendant's guilt.

By failing to properly evaluate the undisclosed exculpatory evidence withheld by the prosecution, the majority improperly invades upon the province of the jury to determine the defendant's guilt with extremely grave consequences. For these reasons, I dissent.