State of Iowa, Appellee, v. Charles Rocker, Appellant.

**County attorney:** DISQUALIFICATION: INDICTMENT: SETTING ASIDE.
1  A county attorney, who through the relation of attorney and client in a civil action, has gained a confidential knowledge of facts subsequently made the basis of a criminal prosecution against his client, is disqualified to act as prosecutor of the charge, and his appearance before the grand jury in the matter of finding and returning the indictment is ground for setting the same aside.

**Husband and wife:** COMPETENCY AS WITNESSES AGAINST EACH OTHER.
2  The objection that a wife is not a competent witness against her husband charged with a crime, does not obtain, where the record discloses that their marriage was illegal.  Evidence held sufficient to show that defendant had another living wife by a prior marriage from whom he had not been divorced and that the marriage with the witness was illegal· and she was not therefore disqualified.

**Marriage:** PRESUMPTIOON AS TO LEGALITY.  When the fact of marriage has been shown a presumption of fact as to its legality
3  arises, but this may be overcome.  In the instant case the evidence is reviewed and held sufficient to overcome the presumption.

**Evidence:** LETTERS.  On a prosecution for murder a letter written
4  the county attorney by one with whom defendant had been living as his wife, protesting her innocence and expressing a wish for defendants conviction and promising disclosures, was competent.

*Appeal from Lyon District Court.*— Hon. G. W. Wakefield, Judge.

Tuesday, March 13, 1906.

The instant defendant was indicted jointly with Dora Rocker, for the crime of murder in the first degree. Upon his motion he was granted a separate trial. The trial resulted in his conviction, and from the judgment he appeals. — *Reversed.*

*E. Y. Greenleaf,* for appellant.

*Chas. W. Mullan,* Attorney General, and *Lawrence De Graff,* Assistant Attorney General, for the State.

BISHOP, J.— I. August Shroeder, the person alleged to have been murdered, came to his death on June 30, 1900. It seems that, shortly thereafter, the defendant, Charles Rocker, was arrested upon information filed before a justice of the peace, charging him with the murder of Shroeder, and upon hearing he was discharged. He then commenced a civil action for malicious prosecution against his accuser, and one of the attorneys employed by him was Simon Fisher, who thereafter, as county attorney, signed the indictment which forms the basis of the present proceeding. Before pleading, defendant filed a motion to quash the indictment, supported by affidavits, basing the same upon the facts above stated, and the further averment that, as his attorney in said civil action, Fisher became possessed of all the information defendant had respecting the death of Shroeder and the circumstances and evidence in relation thereto. The motion then represents that Fisher made use of the information and knowledge thus obtained in conducting the examination of witnesses before the grand jury, in advising the grand jury, and in preparing the indictment voted and returned against the defendant. Notwithstanding the fact that Fisher made no attempt at denial of the matters thus charged, the motion was overruled. We think it should have been sustained. It is true the charge made was in

general terms, but from the mere fact of a retainer in the civil action, it must be presumed that Fisher became possessed of every fact either known to Rocker or concerning which he had information from others respecting the death of Shroeder and the circumstances and cause thereof. The communication, it may readily be supposed, would include the facts concerning his own life and character, as such might become material in various ways. All this would naturally follow a retainer. It was necessary, in the first instance, to enable the attorney to determine whether or not a cause of action existed, and, in the next place, to prepare for a presentation of the case in court and meet any opposition presented in the way of defense. Now, by statute, it is made the duty of an attorney " to maintain inviolate the confidence, and, at any peril to himself, to preserve the secret of his client." Not only is this true by statute, but it is true by every consideration of the ethics of the profession. And it has been held repeatedly that an attorney, who has once been made the recipient of the confidence of a client concerning a certain subject-matter, is thereafter disqualified from acting for any other party adversely interested. in such subject-matter. *State v. Halstead,* 73 Iowa, 376; 4 Cyc., 920, and cases cited in notes.

Such, in effect, was the position in which Fisher placed himself. We need not go to the length of holding that the statements made in the motion and affidavits appearing in this record are sufficient to convict the county attorney of any willful betrayal of professional confidence, and we do not understand counsel for appellant to contend for any such holding. It is enough that the officer placed himself in position to be open to such a charge, and that we make emphatic the declaration of his disqualification to act in the prosecution of his former client, under the circumstances appearing. Being disqualified, he should have moved the appointment of a substitute, as provided for in Code, section 304.

Now the statute provides that an indictment shall be set aside, on motion, when it is made to appear that " any person other than the grand jurors was present before the grand jury during the investigation of the charge, except, as required or permitted by law." Code, section 5319. While ordinarily it is the duty of the county attorney to attend upon the grand jury when required by that body (Code, section 307), there can be no warrant for his appearance when disqualified by reason of his having been attorney for the person charged in respect of the very matter under investigation. He is then a person not required or permitted by law to be before the jury. This conclusion finds support in principle at least, in the case of *State v. Will,* 97 Iowa, 58. There the judge holding the term went to the grand jury room and advised the jury respecting the case against the defendant under investigation, and it was held that he was a person not required or permitted to be before the jury. Accordingly, the indictment found should have been set aside. It follows, from what we have said, that the trial court erred in overruling the motion to set aside the indictment against the present defendant, and the case will be remanded, for submission to another grand jury for investigation and such action as may be determined upon by such grand jury.

II. Some matters appearing in the record before us are of such character that they must enter into and have effect to control in large measure a further trial of the charge against defendant, if such trial shall be had. In view of this, we think it proper that we take note at this time of the more important thereof.

The state introduced evidence to the effect that late in the year 1892 the defendant came to the state of Illinois; 2. HUSBAND AND WIFE: competency as witnesses against each other. that with him was a woman whom he introduced as his wife, and that while there they lived and cohabited together as husband and wife; that a child was there born to them. It was also

made to appear that defendant exhibited a certificate show-
ing his marriage in Germany, of date October 18, 1891,
to the woman he was thus living with. A document pro-
duced in court was identified by a witness as such certif-
icate. It was then made to appear that, in the year 1893,
defendant, with his family, removed from Illinois to Nobles
county, Minn., where the relation of husband and wife con-
tinued down to some time in the year 1899 and that in the
meantime several other children were born to them, and
baptized in the family name of Rocker. That, in the fall
of 1899, defendant left his wife and children in Minnesota,
and came over the line into this state, where he went to
work on the farm of Shroeder, the man he is alleged to have
murdered. That, when arrested, defendant denied having
ever married the woman with whom he had been living;
he also declared that he had never been divorced from her.
The evidence makes disclosure that, at the time of the trial,
said woman was still living in Minnesota. In this state
of the record, Dora Rocker was called as a witness for the
state. Objection was made to her competency as a witness;
it being asserted that she was at the time the wife of the
defendant. Upon being interrogated, the proposed witness
stated that formerly she had been the wife of Shroeder, the
deceased; that after his death she went to Dakota with de-
fendant, where they married, lived and cohabited as husband
and wife, and had a child born to them. The objection
was overruled, and the witness allowed to testify.

The objection was based upon section 4606 of the Code,
which provides that neither the husband nor wife shall in
any case be a witness against the other, etc. It seems clear
to us that the preliminary evidence introduced by the state
was sufficient to make out a *prima facie* case of former mar-
riage on the part of defendant, the force and effect of which
had not been interrupted by death or divorce. The certifi-
cate exhibited by defendant, and produced and identified in
court, recites the marriage of Charles Rocker to Anna Mam-

men, and it was conceded that the latter name was the maiden name of the woman with whom defendant had lived and cohabited in Illinois and Minnesota, as testified to. It is not required that the fact of marriage shall be proven by record evidence. It may be proven as any other fact necessary to be determined in the case. *Kilburn v. Mullen,* 22 Iowa, 498; *State v. Hughes,* 58 Iowa; 165, *State v. Nadal,* 69 Iowa, 478. A certificate of marriage the genuineness of which has been asserted by the party charged, and there being no question as to identification, is sufficient to prove the marriage. *Gilman v. Sheets,* 78 Iowa, 499, 19 Am. & Eng. Ency., 1199. And the law will presume a legal marriage, in the absence of other evidence, where it is shown that the parties have held themselves out to the world as husband and wife and have lived and cohabited together as such. *State v. Wilson,* 22 Iowa, 364; *State v. Sanders,* 30 Iowa, 582; 19 Am. & Eng. Ency., 1204. This being true, and such facts being shown upon the face of the record as it stood at the time, the subsequent marriage of defendant to the woman proposed as a witness was void; she was not his wife; and the objection to her competency was properly overruled. Code, section 3151.

III. As a witness on his own behalf, defendant testified that he came to this country from Germany about the year 1892; that about a year before coming he was married to a woman named Anna Decker, whom he left in Germany. He admits that there came with him to Illinois the woman named Anna Mammen, reference to whom had been made by witnesses for the state. He denies, however, that he ever introduced her as his wife, and denies having lived and cohabited with her as such while in Illinois. He denies parentage of the child there born to her. He admits that when he left Illinois and went to Minnesota, the said woman and child accompanied him, and that during part of the time before he came to Iowa he lived and cohabited with her in Minnesota; also that one or more children were there born to them. But

he asserts that the relation with said woman was at all times, and wholly, illicit, and not of marriage. As to the certificate of marriage exhibited by him while in Illinois — and which was produced in court — he says that, when he came from Germany, he brought with him the certificate of his marriage to Anna Decker, and that, after his arrival in company with Anna Mammen, there was erased from such certificate the name of Decker, and in place thereof, the name Mammen was written or inserted therein. The certificate bears evidence that an erasure had taken place where the name Mammen was written in. As to the woman Anna Decker, defendant says no more than that about four years after he left Germany he heard that she had remarried.

At the close of the evidence, counsel for defendant presented several requests for instructions having relation to the question of the competency of the witness Dora Rocker, and of her evidence. We need not set out such requests in full. The theory thereof, as a whole, may be thus stated: That the marriage of defendant to Mrs. Shroeder must be presumed to be lawful; that, to support such presumption of legality, the law will indulge in the further presumption that at the time of such marriage the first wife of defendant, Anna Decker, was dead or divorced; and, further, that such presumption of legality cannot be overcome by proof of the fact that prior thereto defendant is shown to have sustained an illicit relationship with Anna Mammen. Such requests were overruled, and the case was submitted to the jury with instructions to find the facts: First, whether the evidence as a whole disclosed that the marriage relation shown to have been contracted between defendant and Anna Decker had been dissolved by death or divorce; Second, whether the evidence as a whole disclosed that as between defendant and Anna Mammen the relation sustained was that of husband and wife. And the jury was then told that, if satisfied that the marriage to Anna Decker had not been thus dissolved, or if the relation of defendant

3. MARRIAGE: presumption as to legality.

to Anna Mammen had been that of a husband — and as confessedly she was alive and not divorced — then, and in either event, the marriage to Mrs. Shroeder was void, and her testimony should be accepted and considered by the jury. On the other hand, if Anna Decker was found to be dead or divorced, and the relation with Anna Mammen was found to be not that of marriage then the marriage to Mrs. Shroeder was valid, and her testimony should be given no consideration whatever: it should be rejected as a whole, and the case determined as though such testimony had not been introduced.

There is, of course, a presumption in favor of legality arising from naked proof that a marriage has taken place. But it is a presumption of fact, and may be overcome by proof, among other things, that one or both the parties was incompetent to enter into the relation. Accordingly the presumption must give way at once in the face of proof that the defendant had a former wife living and undivorced, and his incompetency to enter into the subsequent marriage is thus established. And we may concede that, in cases presenting a situation such as the record before us discloses, the prosecution must assume the burden to overcome the presumption as to legality. It is the argument for the state that upon the whole record this burden was met; that, at least, sufficient appeared to take the case to the jury. And this we think is true.

To begin with, we have the fact of the marriage of defendant to Anna Decker in 1891. This was sufficiently established by his own declaration. 19 Am. & Eng. Ency., 1201. Now, it is fundamental doctrine that the marital relation can be terminated or dissolved only by death or by formal decree of divorce entered by a competent court having jurisdiction of the subject-matter and of the parties. And, being continuous in character, when the relation is once shown to exist, it will be presumed as against the immediate parties at least to continue. Such is the general

rule governing the subject: Gilman v. Sheets *supra; Erskine v. Davis,* 25 Ill. 251; *Clark v. Cassidy,* 62 Ga. 408; 5 Cyc., 700; Lawson, Presumptive Evidence, 223. It is to be remarked that the presumption thus arising is not disturbed by any matter of fact appearing on the face of the instant record. No more is disclosed than that defendant, by his own confession willfully deserted his young wife and child, and came to this country in company with another woman. He has never even taken the trouble to inform himself of the welfare or condition of life of those whom he abandoned. Such being the circumstances, the courts will not indulge in any presumption of innocence in favor of his subsequent matrimonial venture. This is the rule in bigamy cases, and we see no reason why it should not be given application here. 5 Cyc. 699, citing *Parker v. State,* 77 Ala. 47 (54 Am. Rep. 43); *Com. v. Caponi,* 155 Mass. 534 (30 N. E. 82); *Gorman v. State,* 23 Tex. 646.

The case is quite different, and for obvious reasons, where the subsequent marriage is by the faithful spouse. It is a matter of statute in this state, as it is in other states, that prosecution of a husband or wife as for bigamy may not be had where his or her spouse " has continually remained beyond seas, or who has voluntarily withdrawn from the other and remained absent for the space of three years together, the party marrying again not knowing the other to be living within that time." Code, section 4933, 4934. So, too, it is established doctrine at common law that, where one absents himself from home and is unheard of for a period of seven years, he will be presumed to be dead. Greenleaf Evidence, section 41; *State v. Henke,* 58 Iowa, 457. And there are many cases in the books holding that in such situation, and independent of any statute, if the faithful spouse shall marry again after a lapse of such period — or even a shorter period in some of the states — a presumption of innocence will be indulged to negative the presumption of a continuance of life on the part of the absent spouse. In

some of the states it has been held that the presumption of innocence is sufficient to neutralize the conflicting presumption of life, while in other states it is required that the conflicting presumptions shall be submitted to the jury for a verdict. 4 Am. & Eng. Ency., 46. But such statute is essentially one of limitation upon the right to punish as for a crime. It can be invoked only by the faithful spouse, and this appears from a reading thereof. And there can be no reason for extending the common-law rule of presumption to include the recreant spouse. The rule was intended for the innocent, and not for one who has absented or placed himself " beyond seas." And we are not ready to cast reproach upon the institution of marriage by holding that a spouse who has remarried, while yet the stains of recreancy are recent on his garments, may shelter himself from attack — much less arrogate to himself a right or benefit — under a rule to the spirit and reason of which his conduct has been wholly repugnant.

It has not been overlooked by us that there are occasions on which a resort to presumptive evidence is proper to be indulged, even to support the subsequent marriage of a recreant spouse, where necessary to sustain the legitimacy of children, or in making disposition of property interests, and where by reason of death, insanity, or other casuality, the facts are incapable of proof by direct evidence. In such cases the presumption is allowed in favor of innocent third persons, and manifestly the principle involved can have no bearing to support the contention as now made for defendant in this case. Accordingly we shall do no more than to make reference to some of the reported cases in which the subject is discussed. *Blanchard v. Lambert,* 43 Iowa, 228, *Ellis v. Ellis,* 58 Iowa, 720; *Gilman v. Sheets, supra; Barnes v. Barnes,* 90 Iowa, 282; *Leach v. Hall,* 95 Iowa, 611; *Parsons v. Grand Lodge,* 108 Iowa, 6. And see *In re Colton Estate* 129 Iowa 542.

But, if it were possible to reach any other conclusion

than as above stated, still it would follow that the requests were properly refused, in view of what appears respecting defendant's relations with the woman Anna Mammen. The evidence tends to show that for several years he lived and cohabited with her; that they proclaimed each other husband and wife, and had children who were baptized in the family name of Rocker. And Anna Mammen was alive and not divorced at the time of the marriage to Mrs. Shroeder. Common-law marriages are valid, and from the evidence before them the jury may well have found that such a marriage in fact existed. Blanchard v. Lambert, *supra;* *McFarland v. McFarland,* 51 Iowa, 565, 5 Cyc., 703.

Having found such to be the fact, it would follow, as matter of course, that the evidence sought to be excluded was proper to be considered, for in such case no relation of husband and wife existed between the witness and defendant.

Complaint is made of the introduction in evidence of a letter written by Dora Rocker to Simon Fisher, county attorney, and dated subsequent to the indictment, at Elkton, **4. Evidence:** S. D. In substance, the letter makes protes **letters.** tation of her innocence, expresses a desire that defendant be punished, and promises that if the attorney will visit her she will tell him some things that had been told to her by others, and which she had previously withheld under promise; also that she will tell "his [defendant's] dream, and what he has done to me." This letter was clearly incompetent and should not have been admitted.

For the errors pointed out, the judgment is reversed, and the cause remanded, for further proceedings according to law.— *Reversed.*