STATE OF WEST VIRGINIA

*v.*

ROBERT E. BRITTON

(No. 13152)

Submitted January 30, 1973.     Decided March 26, 1974.

712

*Frank M. Armada, John S. Sibray* for plaintiff in error.

*Chauncey H. Browning, Jr.,* Attorney General, *George E. Lantz,* Deputy Attorney General, *Richard E. Hardison, E. Leslie Hoffman, III,* Assistant Attorneys General, for defendant in error.

HADEN, JUSTICE:

This is a writ of error and supersedeas from a final order of the Circuit Court of Putnam County, which overruled appellant's motion to set aside the verdict and judgment entered thereon sentencing him to ninety days in jail for conviction of the misdemeanor of unlawfully selling alcoholic beverages, in violation of West Virginia Code, Chapter 60, Article 6, Section 8, as amended.

The errors assigned on this appeal do not relate to the conduct of the trial or the facts adduced to prove the substantive offense for which the appellant was convicted. Rather, they relate to certain conversations had between the defendant Britton and the prosecuting attorney of Putnam County in the absence of defendant's retained counsel, which occurred during the time between the original charge for the crime and the trial. Britton moved that the indictment against him be dismissed before trial; that the prosecutor be disqualified from going forward with the case; and, that the results of the trial be nullified by the court. These matters were raised by seasonable motions, alleging that the conduct of the prosecutor denied the defendant effective assistance of counsel and a fair trial as guaranteed by Article III, Sections 10 and 14 of the West Virginia Constitution, and the Fourteenth Amendment to the Federal Constitution.

The foregoing charges were developed at a hearing conducted by the trial court outside the presence of the jury on the day of and prior to trial. The testimony taken demonstrates that Britton was charged with the crime in question on January 23, 1971 and was taken before a justice of the peace where he posted bond pending a preliminary hearing. On January 26, the defendant retained Frank M. Armada, Attorney at Law, to represent him in the case. No subsequent preliminary hearing was held.

On February 24, Britton approached Clarence Watt, the then prosecuting attorney for Putnam County, in the record room at the Putnam County Courthouse in Winfield. There he had a conversation with the prosecutor regarding the charge pending against him, at which time the prosecutor suggested to him that he plead guilty or *nolo contendere* to the charge pending in the justice court. In return, the prosecutor agreed to recommend the minimum penalty provided by law. Britton also requested the prosecutor's aid in disposing of another unrelated charge involving littering. The littering charge was apparently concluded to the satisfaction of Britton. On the same date Britton made some contact with the Judge of the Circuit Court of Putnam County concerning the possession of alcoholic beverages charge. The court refused to converse with Britton concerning the criminal charge against him.

Britton, apparently dissatisfied with the results of his conversation with the prosecutor and the court, called the prosecutor on the next day, maintained his innocence of the charge and, in words to this effect, told the prosecutor to go ahead and indict him. On March 1, 1971, the prosecutor accommodated the appellant; the grand jury returned a true bill on the charge for which the defendant was convicted.

On March 9, Britton appeared in court with his attorney, Frank Armada, and pleaded not guilty to the indictment. Two days later, Britton, without the knowledge of his

counsel, attempted contact with the prosecuting attorney. The prosecutor was then unavailable but later returned the phone call to Britton's home. At the request of Britton, the prosecutor agreed to meet with Britton in the presence of Britton's brother John, at the prosecutor's private law office in Nitro, West Virginia, at 6:00 o'clock p.m. on March 12, 1971. Accordingly, the defendant and his brother met with the prosecutor for a period of approximately thirty minutes on the twelfth of March. Britton's retained counsel, uninvited and unaware, was not present.

Britton's testimony, recounting the events of that meeting, was corroborated by his brother John. He said that the prosecuting attorney recommended to him that he plead guilty to the charge, but that he communicated to the prosecutor that he would prove his innocence by his own denial and by the testimony of his elderly father, Cecil Britton, and his employee Delores Frank. These two prospective witnesses would corroborate his statements that, on the night specified in the warrant, when state troopers had allegedly entered his place of business and made a buy of illegal whiskey, no one had entered his business premises and purchased whiskey. The plea bargaining attempt by the defendant Britton was unsuccessful and the defendant left the prosecutor's private law office reiterating his innocence and his intention to go to trial. The prosecutor testified that he was aware that Frank Armada had been previously retained to represent the defendant when the March 12th meeting was held. In fact, the prosecutor said that he advised the defendant to counsel with his attorney on the matters contained in the charge and as to the question of whether to plead guilty or to go to trial. The prosecutor also strongly denied he had extensively discussed with Britton the merits of the criminal charge.

The appellant's assignment of error that he was deprived of his constitutional rights by reason of being denied effective assistance of counsel is absolutely without

merit. Presuming that he is entitled to the assistance of counsel, retained or appointed, to adequately defend the misdemeanor charge, we are of the opinion that there is abundant evidence to demonstrate that he intelligently waived the assistance of counsel during plea negotiations. He conducted himself as if he could negotiate a favorable plea bargain without assistance. The right to have assistance of counsel may be waived if done so intelligently and understandingly. *State ex rel. Fountain v. King,* 149 W.Va. 511, 142 S.E.2d 59 (1965); *State ex rel. Arbraugh v. Boles,* 149 W.Va. 193, 139 S.E.2d 370 (1964); *State ex rel. Post v. Boles,* 147 W.Va. 26, 124 S.E.2d 697 (1962). The actions of the defendant affirmatively demonstrate his waiver.

Were this the only problem presented on appeal, we would remand the defendant in custody to ponder (for ninety days) the pithy and pungent truism that "he who acts as his own attorney has a fool for a client."

Unfortunately, the charge that the prosecutor's conduct may have deprived the defendant of due process and denied him a fair trial, has more substance. There are two aspects of unfairness inherent in the facts presented on this appeal. First, the prosecutor knowingly consulted with one under indictment in his jurisdiction in the absence of accused's counsel and with foreknowledge the accused had secured counsel. Secondly, the prosecutor may have gained some information useful to him in securing the subsequent conviction of the accused.

A prosecutor's duty as a public officer is to serve the interest of the State in securing convictions of those who violate the laws of this organized society. On a concomitant parity with the former duty is the duty that a prosecutor must conduct his office always to insure justice for those subjected to prosecution. Consequently, a prosecutor's duty to the accused is fairness. Though the public interest demands that a prosecution be conducted with energy, skill and zealousness, the State's attorney should see that no unfair advantage is taken of the

accused. "It is as much the prosecutor's duty to see that a person on trial is not deprived of any of his statutory or constitutional rights as it is to prosecute him for the crime with which he may be charged." 63 AM. JUR. 2d *Prosecuting Attorneys* § 27 (1972); See also, 27 C.J.S., *District and Prosecuting Attorneys* § 12 (1972 Supp.).

This duty to the accused is affirmative. *McDonald v. Musick,* 425 F.2d 373 (9th Cir. 1970); *Moore v. Gladden,* 275 F. Supp. 703 (D. Or. 1967); *State v. Tate,* 185 La. 1006, 171 So. 108 (1936); *Adams v. State,* 202 Miss. 68, 30 So. 2d 593 (1947); *People v. Grossman,* 35 Misc. 2d 488, 230 N.Y.S.2d 852 (1962); *State v. Osborne,* 54 Or. 289, 103 P. 62 (1909); *State v. Montgomery,* 56 Wash. 443, 105 P. 1035 (1909). Further, it is likewise recognized in the Code of Professional Responsibility, "The responsibility of a public prosecutor differs from that of the usual advocate; his duty is to seek justice, not merely to convict." Canon 7; and see, A.B.A. Canon 5 and *Berger v. United States,* 295 U.S. 78, 55 S. Ct. 629, 79 L. Ed. 1314 (1935); Accord, A.B.A. Opinion 150 (1936).

The general rule, of which we are all aware, is that an attorney should not undertake to represent adverse or conflicting interests. A prosecuting attorney should not, therefore, attempt to counsel with an accused when he is also committed to the responsibility of prosecuting the accused. Very likely, the prosecutor in this case may have acted with wholly innocent motives. Good faith, however, does not provide legal excuse nor mitigate against the necessity to avoid conflict. In the case of *Steeley v. State,* 17 Okl. Cr. 252, 187 P. 821 (1920), on very similar facts, the reviewing court reversed the conviction and held, regardless of the prosecutor's good faith and intentions, he was representing conflicting interests when he acted for accused's absent counsel at a preliminary hearing, and his failure to disqualify himself at trial was error. See also, 63 AM. JUR. 2d, *Prosecuting Attorneys, supra* § 29. Herein, the prosecutor may have been merely accommodating to a citizen of his county and may not have overtly intended

to gain knowledge of the method of defense which would be employed by the accused, or the names of the witnesses who would testify for the accused. Nevertheless, information from the accused, in some measure, was imparted to him and it came at a time when the prosecutor knew that the accused was represented by retained defense counsel.

Consequently, we are impelled to hold that though the services rendered or consultations given were gratuitous and done in good faith, a prosecuting attorney should not be permitted to participate in a criminal case if, by reason of his professional relations with the accused, he has acquired any knowledge of facts upon which the prosecution is predicated or closely related. See, *e.g., Corbin v. Broadman,* 6 Ariz. App. 436, 433 P.2d 289, 31 A.L.R.3d 943 (1967), *reh.den. and rev.den.* (1968); *People v. Gerold,* 265 Ill. 448, 107 N.E. 165 (1914); *State v. Leigh,* 178 Kan. 549, 289 P.2d 774 (1955); *State v. Burns,* 322 S.W.2d 736 (Mo. 1959); *Ward v. State,* 33 Okl. Cr. 182, 242 P. 575 (1926). To insure a fair trial, a prosecutor should not counsel with an accused who is represented by his own attorney, in the absence of that attorney, concerning aspects of the pending prosecution against the accused.

The Attorney General says that conceding the prosecutor's conduct to have been improper as a possible violation of the Canons of Ethics, such conduct does not *per se* constitute reversible error in a criminal trial. We are in hearty agreement, but we are also of the opinion, amply supported by precedents, that constitutional requirements of due process mandate a fair trial for the defendant. Article III, Section 14 of the West Virginia Constitution. *State v. Wilson,* 157 W.Va. 566, 202 S.E.2d 828 (1974); *State v. Harr,* 156 W.Va. 492, 194 S.E.2d 652 (1973); *State v. Smith,* 156 W.Va. 385, 193 S.E.2d 550 (1972). The *Canons* and Trial Court Rule IV are merely instructive illustrations of constitutional guarantees put to practice.

We are also mindful of the rule of harmless constitutional error. However, it cannot be said with certainty that the information volunteered by Britton to the

prosecutor at the meeting in his private law office prior to the trial did not contribute to the defendant's conviction. To have gained some knowledge from the accused in advance of trial—what witnesses the defendant would use in his basic defense to the charge—could have provided the prosecutor with a possible advantage to overcome the defense. On the facts, the State cannot show that the error was harmless beyond a reasonable doubt or that there was no reasonable possibility that the error complained of might have contributed to the conviction. *Chapman v. California,* 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967); *Fahy v. Connecticut,* 375 U.S. 85, 84 S. Ct. 229, 11 L. Ed. 2d 171 (1963); *Glasser v. United States,* 315 U.S. 60, 62 S. Ct. 457, 86 L. Ed. 680 (1942).

The prosecutor should have recused himself from the trial of this case. Failing to have done so on his own motion, the trial court abused its discretion in ruling that the prosecutor was not disqualified. The hearing on the motion took place before the trial and could have been remedied there and at that time. The defendant is entitled to a new trial at the hands of a wholly disinterested prosecutor. See, *Lorraine v. Gladden,* 261 F. Supp. 909 (D. Or. 1966); *Anderson v. North Carolina,* 221 F. Supp. 930 (W.D. N.C. 1963); *Young v. State,* 177 So. 2d 345 (Fla. App. 1965); *People v. Gerold, supra;* see also, Annotation, 31 A.L.R.3d 953, 983 (1970) "Disqualification of Prosecuting Attorney on Account of Relationship With Accused." These cases and like authority hold that justice requires a new trial for the defendant convicted by a disqualified prosecutor.

When courts, in rare instances, find it necessary to reverse a case because of the conduct of one of its officers toward an accused, the principle is not to punish the offending officer or, intentionally, to burden society with the cost of retrial. As pertinently stated by Mr. Justice Douglas, speaking for the Court in *Brady v. Maryland,* 373 U.S. 83, 87, 83 S. Ct. 1194, 1197, 10 L. Ed. 2d 215 (1963):

> "The principle . . . is not punishment of society for misdeeds of a prosecutor but avoidance of an unfair trial to the accused. Society wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly. An inscription on the walls of the Department of Justice states the proposition candidly for the federal domain: 'The United States wins its point whenever justice is done its citizens in the courts.' "

Believing firmly in the foregoing statement of principle, and being sensitive to the policy forbidding the advocacy of conflicting interests, we reverse the conviction of the defendant Britton and remand his case to the Circuit Court of Putnam County for a new trial.

*Reversed and remanded.*