361 S.E.2d 456

**Michael C. FARBER**

v.

**James Wilson DOUGLAS, Prosecuting Attorney of Braxton County, West Virginia, and Danny O. Cline, Judge of the Circuit Court of Braxton County, West Virginia.**

No. 16886.

Supreme Court of Appeals of West Virginia.

Dec. 18, 1985.

Statement of Justice McGraw Oct. 19, 1987.

Dan L. Hardway, Quarrier & Dunbar Sts., Charleston, for petitioner.

Silas B. Taylor, Deputy Atty. Gen., Charleston, for respondent James Wilson Douglas.

Danny O. Cline, pro se.

MILLER, Chief Justice:

In this original prohibition action, we are asked to prohibit the circuit court judge and the prosecuting attorney of Braxton County from taking any action against Michael Farber, the relator, based upon a two-count false swearing indictment recently returned by a Braxton County grand jury against the relator.

Two grounds are asserted for the prohibition. First, the prosecutor should have disqualified himself as a matter of law from seeking this indictment because he has a direct interest in the criminal charge, which arose out of a civil action in which he was a party. The underlying civil action, which was filed by the relator as the attorney representing a group of taxpayers, involved, in part, the propriety of the prosecutor's actions in relocating his law office into a building purchased by the Braxton County Commission. Second, the charge of false swearing should be declared void as a matter of law. We conclude the indictment must be dismissed as a matter of law for both reasons asserted and award the writ of prohibition.

The respondent prosecutor, who is represented by the attorney general, does not

address the merits of the prohibition claim, but challenges the relator's right to prohibition in this Court because he could have filed for similar relief in the Circuit Court of Braxton County. The respondent judge has filed a pro se response in which he asserts that he is without knowledge of the underlying facts and, therefore, takes a neutral position.

■ In addressing the respondent prosecutor's claim that prohibition in this Court is improper, we find the argument lacks merit under Syllabus Point 1 of *Hinkle v. Black*, 164 W.Va. 112, 262 S.E.2d 744 (1979):

"In determining whether to grant a rule to show cause in prohibition when a court is not acting in excess of its jurisdiction, this Court will look to the adequacy of other available remedies such as appeal and to the over-all economy of effort and money among litigants, lawyers and courts; however, this Court will use prohibition in this discretionary way to correct only substantial, clear-cut, legal errors plainly in contravention of a clear statutory, constitutional, or common law mandate which may be resolved independently of any disputed facts and only in cases where there is a high probability that the trial will be completely reversed if the error is not corrected in advance."

■ *Hinkle* involved a situation where the relator claimed the trial court had abused its powers whereas here we have a claim that the prosecutor acted beyond his jurisdiction by seeking an indictment when he should have disqualified himself.

Furthermore, we have utilized prohibition to control the actions of prosecutors where they have acted improperly in performing their official duties. In *State ex rel. Miller v. Smith*, 168 W.Va. 745, 285 S.E.2d 500 (1981), we granted a writ of prohibition to prevent a prosecutor from improperly influencing a grand jury.[1] A

writ of prohibition was also granted in *State ex rel. Moran v. Ziegler*, 161 W.Va. 609, 244 S.E.2d 550 (1978), to prevent a private prosecutor from assisting the public prosecutor when it appeared that he had had prior consultations with the defendant concerning the same offense. *Cf. State v. Britton*, 157 W.Va. 711, 203 S.E.2d 462 (1974). Therefore, if we find that the prosecutor should have disqualified himself from seeking the false swearing indictment against the relator, prohibition would be an appropriate remedy for this usurpation of judicial power.

The substantive issue in the present case is whether a public prosecutor is foreclosed from pursuing a criminal prosecution in a case in which he has a direct interest and is personally implicated. Here the prosecutor was a named party to the underlying civil suit filed by the relator against the county commissioners. The object of that civil action brought by certain taxpayers was to remove the commissioners on the theory that they had acted improperly in the purchase of a building into which the prosecutor's offices were relocated. Even though the prosecutor was dropped as a named party under an agreement that he would not represent the county commissioners, we do not believe this action removed his interest since his law office arrangement with the commissioners was part of the subject matter of the underlying civil litigation.

Furthermore, the actual event leading to the indictment was a motion by the relator to have the judge who presided in the civil action to disqualify himself insofar as he had jurisdiction to reconsider his earlier decision not to appoint a special prosecutor to investigate the conduct of the prosecutor. Specifically, the taxpayers alleged that the prosecutor offered something of value to a county commissioner to influence his vote on the purchase of the building, in violation of W.Va.Code, 61–10–15,

---

1. Syllabus Point 3 of *Miller* states:
   "A prosecuting attorney who attempts to influence a grand jury by means other than the presentation of evidence or the giving of court supervised instructions, exceeds his lawful jurisdiction and usurps the judicial power of the circuit court and of the grand jury. Consequently, prohibition will lie to prevent such usurpation of judicial power."

and gave false testimony under oath, in violation of W.Va.Code, 61–5–2.

The relator, as the attorney representing the taxpayers, executed an affidavit sworn before a notary public in connection with his motion to disqualify in which he stated the motion was made in good faith and there were "ample facts of record" to support the allegations made in the motion.[2] The false swearing indictment was based upon this sworn affidavit. Thus, we are presented with a situation where a prosecutor who has been charged by a group of taxpayers with allegedly committing certain criminal acts subsequently seeks a false swearing indictment against the taxpayers' attorney who executed a sworn affidavit attached to the motion in which the allegations were made.

We have often discussed the obligations of a public prosecutor in serving the interests of the State as well as the defendant. In *Britton*, 157 W.Va. at 715–16, 203 S.E.2d at 466, we elaborated on this issue:

"A prosecutor's duty as a public officer is to serve the interest of the State in securing convictions of those who violate the laws of this organized society. On a concomitant parity with the former duty is the duty that a prosecutor must conduct his office always to insure justice for those subjected to prosecution. Consequently, a prosecutor's duty to the accused is fairness. Though the public interest demands that a prosecution be conducted with energy, skill and zealousness, the State's attorney should see that no unfair advantage is taken of the accused. 'It is as much the prosecutor's duty to see that a person on trial is not deprived of any of his statutory or constitutional rights as it is to prosecute him for the crime with which he may be charged.' 63 Am.Jur.2d *Prosecuting Attorneys* § 27 (1972); See also, 27 C.J.S.,

*District and Prosecuting Attorneys* § 12 (1972 Supp.)."

*See also, Myers v. Frazier*, 173 W.Va. 658, 319 S.E.2d 782 (1984); *State ex rel. Hamstead v. Dostert*, 173 W.Va. 133, 313 S.E.2d 409 (1984); *State ex rel. Skinner v. Dostert*, 166 W.Va. 743, 278 S.E.2d 624 (1981); *State ex rel. Moran v. Ziegler, supra*. The prosecutor in *Britton* had previously consulted with the defendant concerning the crime with which he was subsequently charged. We held that the prosecutor had an obligation to recuse himself from the case in order to protect the due process rights of the defendant.

In Syllabus Point 3 of *State v. Boyd*, 160 W.Va. 234, 233 S.E.2d 710 (1977), we made this comment on the duties of a public prosecutor:

"The prosecuting attorney occupies a quasi-judicial position in the trial of a criminal case. In keeping with this position, he is required to avoid the role of a partisan, eager to convict, and must deal fairly with the accused as well as the other participants in the trial. It is the prosecutor's duty to set a tone of fairness and impartiality, and while he may and should vigorously pursue the State's case, in so doing he must not abandon the quasi-judicial role with which he is cloaked under the law."

It is generally held that a prosecutor is disqualified from acting in a criminal proceeding where he has a personal or pecuniary interest in the proceeding that conflicts with his duties as a public prosecutor. *E.g., People v. Jiminez*, 187 Colo. 97, 528 P.2d 913 (1974) (En Banc); *Blanton v. Barrick*, 258 N.W.2d 306 (Iowa 1977); *Sinclair v. State*, 278 Md. 243, 363 A.2d 468 (1976); *People v. Nuzzi*, 128 Misc.2d 502, 489 N.Y.S.2d 836 (1985); *People v. Krstovich*, 72 Misc.2d 90, 338 N.Y.S.2d 132 (1972); *see generally*, 63A Am.Jur.2d *Prosecuting At-*

**2.** The relevant portion of the sworn affidavit signed by the relator states:

"Before the undersigned authority this day appeared Michael C. Farber, who being by me first duly sworn, deposes and says as follows:

"1. That he is counsel of record for the Taxpayers of Braxton County, an unincorporated association.

"2. That the attached Motion to Disqualify is made in good faith and that there are ample facts of record to support the allegations set forth therein to warrant the limited disqualification of the presiding judge and thereafter, the appointment of a special prosecutor.

"Further deponent sayeth naught."

*torneys* §§ 30–32 (1984); 27 C.J.S. *District & Prosecuting Attorneys* § 12(6) (1959); Annot., 31 A.L.R.3d 953 (1970).

In *Jiminez,* the prosecutor tried the defendant on a charge of vehicular homicide. Previously this prosecutor had sued the defendant in a civil action arising out of the same accident on behalf of an injured passenger. In condemning this conflict of interest, the court quoted from an earlier opinion, *People v. (Attorneys Respondent),* 162 Colo. 174, 177, 427 P.2d 330, 331 (1967) (En Banc) (per curiam):

> "To you, and to any others in the profession, if any there may be, who have labored under the misconception that there is nothing wrong when a district attorney acts as counsel for a litigant in a civil case, and prosecutes a criminal case based upon the facts giving rise to the civil action, we give warning: This court will not countenance or tolerate such conduct. We condemn it."

In *Sinclair,* the Maryland Court of Appeals examined a situation where an apparent conflict existed between the prosecutor's private representation of certain clients and the prosecution of the defendant on worthless check charges. The court concluded, 278 Md. at 258, 363 A.2d at 477, if the alleged facts were true, the prosecutor was disqualified, stating: [3]

> "When faced with a situation in which the official obligations and private interests of a prosecutor conflicted, the other courts of this nation, with few exceptions, have taken positions consistent with what we have said here. *See, e.g., Ganger v. Peyton,* 379 F.2d 709 (4th Cir.1967); *People v.* , 162 Colo. 174, 427 P.2d 330 (1967) (per curiam); *People ex rel. Colorado Bar Ass'n v.* , 90 Colo. 440, 9 P.2d 611 (1932); *In re Guardianship of Angell,* 26 Ill. App.2d 239, 167 N.E.2d 711 (1960); *State v. Jones,* 306 Mo. 437, 268 S.W. 83, 85–86 (1924); *In re Truder,* 37 N.M. 69, 17 P.2d

951 (1932); *People v. Krstovich,* 72 Misc.2d 90, 338 N.Y.S.2d 132 (Greene County Ct.1972); *In re Williams,* 174 Okla. 386, 50 P.2d 729 (1935); *Hall v. State,* 24 Okla.Crim. 197, 217 P. 229 (1923); *State v. Basham,* 84 S.D. 250, 170 N.W.2d 238 (1969); *Hosford v. Eno,* 41 S.D. 65, 168 N.W. 764 (1918); *Callahan v. Jones,* 200 Wash. 241, 93 P.2d 326 (1939). *But see Commonwealth v. Dunlap,* 233 Pa.Super. 38, 335 A.2d 364 (1975); *State v. Goodwin,* 250 S.C. 403, 158 S.E.2d 195 (1967)."

A strong analogy exists with federal cases that have applied *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), which authorized the issuance of a federal injunction to enjoin state criminal prosecutions that are brought in bad faith or for purposes of harassment where the prosecution threatens a defendant's federal constitutional rights and may cause irreparable injury.[4] *See, e.g., Smith v. Hightower,* 693 F.2d 359 (5th Cir.1982); *Wilson v. Thompson,* 593 F.2d 1375 (5th Cir.1979); *Shaw v. Garrison,* 467 F.2d 113 (5th Cir.), *cert. denied,* 409 U.S. 1024, 93 S.Ct. 467, 34 L.Ed.2d 317 (1972); *McDonald v. Musick,* 425 F.2d 373 (9th Cir.), *cert. denied,* 400 U.S. 852, 91 S.Ct. 54, 27 L.Ed.2d 90 (1970); *Rowe v. Griffin,* 676 F.2d 524 (11th Cir. 1982); *see generally* B. Gershman, Prosecutorial Misconduct § 4.5 (1985).

Typical of these *Younger* doctrine cases is *Wilson* where the defendants had originally been arrested on misdemeanor battery charges in state court. These charges were eventually placed on the court's "dead docket" book with the notation "insufficient evidence." Thereafter, the defendants brought a civil action for damages against the two officers who had arrested them on the misdemeanor charges. The officers then visited the judge who had placed the criminal charges on the dead docket. He referred them to the prosecu-

---

**3.** The trial court had refused the defendant an evidentiary hearing on the disqualification issue and had only permitted the defendant's attorney to vouch the record. Consequently, the case was remanded for a hearing on the disqualification issue.

**4.** In *Younger,* the United States Supreme Court found the defendant did not allege that the criminal prosecution was brought in bad faith and, therefore, denied relief.

tor who subsequently placed the criminal charges on the active criminal calendar.

At this point, the defendants sought an injunction under *Younger* in the federal district court, which was refused. The Fifth Circuit reversed and remanded the case back to the district court for additional hearings in light of a three-part test outlined in the opinion.[5] We need not explore in depth the *Younger* doctrine in the present case. It is sufficient for our purposes to note that even under the constraints federal courts have in interfering with state court proceedings, a prosecution brought in bad faith or for harassment may be subject to injunctive relief.

■ In applying the foregoing law to the present case, we conclude as a matter of law the prosecutor should have disqualified himself from seeking the false swearing indictment against the relator. The pertinent facts upon which our decision rests cannot be disputed and are contained in the indictment itself. In the indictment, the allegations of criminal impropriety on the part of the prosecutor made by the group of taxpayers in a motion to disqualify are quoted. These allegations concern the prosecutor's involvement with various county commissioners in the purchase of a building into which the prosecutor's offices were relocated. The indictment charges the relator with swearing falsely in an affidavit attached to the motion to disqualify that there were ample facts of record to support the taxpayers' allegations. Clearly his direct involvement in the underlying allegations rendered it impossible for the prosecutor to objectively serve the interests of justice.

■ Since the prosecutor should have disqualified himself as a matter of law from seeking this indictment, his presence before the grand jury in this matter was unauthorized and vitiates the indictment. *See also Corbin v. Broadman*, 6 Ariz.App. 436, 433 P.2d 289, 31 A.L.R.3d 943 (1967); *Nichols v. State*, 17 Ga.App. 593, 87 S.E. 817 (1916); *State v. Hardy*, 406 N.E.2d 313 (Ind.App.1980); *State v. Rocker*, 130 Iowa 239, 106 N.W. 645 (1906); *Coblentz v. State*, 164 Md. 558, 166 A. 45, 88 A.L.R. 886 (1933); *State v. Detroit Motors*, 62 N.J.Super. 386, 163 A.2d 227 (1960); *People v. Krstovich, supra. See generally State v. Frazier*, 162 W.Va. 602, 252 S.E.2d 39 (1979); *State v. Wetzel*, 75 W.Va. 7, 83 S.E. 68 (1914); Annot., 23 A.L.R.4th 397 (1983).

We also find the indictment must be dismissed as a matter of law because the facts alleged against the relator do not constitute false swearing. In *State v. Crowder*, 146 W.Va. 810, 123 S.E.2d 42 (1961), we discussed at some length the crime of false swearing as defined in W.Va.Code, 61–5–2.[6] We commented on the interrelationship between the crimes of perjury and false swearing and noted that under W.Va.Code, 61–5–3, perjury is punished as a felony while false swearing is punished as a misdemeanor. *See also State v. Wade*, 174 W.Va. 381, 327 S.E.2d 142 (1985). *Crowder* also addressed the statutory changes made in the 1931 revised Code to perjury and false swearing, which were summarized as follows:

5. The Fifth Circuit set out the following test for the district court to consider and apply on remand:

"The Court should consider whether the plaintiffs have shown, first, that the conduct allegedly retaliated against or sought to be deterred was constitutionally protected, and, second, that the State's bringing of the criminal prosecution was motivated at least in part by a purpose to retaliate for or to deter that conduct. If the Court concludes that the plaintiffs have successfully discharged their burden of proof on both of these issues, it should then consider a third: whether the State has shown by a preponderance of the evidence that it would have reached the same decision as to whether to prosecute even had the impermissible purpose not been considered." 593 F.2d at 1387. (Footnote omitted).

6. W.Va.Code, 61–5–2, provides:

"To wilfully swear falsely, under oath or affirmation lawfully administered, in a trial of the witness or any other person for a felony, concerning a matter or thing not material, and on any occasion other than a trial for a felony, concerning any matter or thing material or not material, or to procure another person to do so, is false swearing and is a misdemeanor."

"Perjury was defined as false swearing in a trial for a felony concerning a material matter or thing; but false swearing in a trial for a felony on a matter not material, and on any other occasion concerning any matter or thing material or not material was made a separate offense." 146 W.Va. at 827, 123 S.E.2d at 52–53.

It does not appear that we have had a criminal case involving false swearing by way of a sworn affidavit or other document.[7] Clearly W.Va.Code, 61–5–2, can be applied to false swearing in affidavits because it is applicable "in a trial of the witness or any other person for a felony, concerning a matter or thing not material, and *on any occasion* other than a trial for a felony, concerning any matter or thing material or not material...." (Emphasis added). In *Wade*, we discussed the meaning of the words "lawfully administered" as used in W.Va.Code, 61–5–1 and –2, and quoted with approval this statement from R. Perkins, Criminal Law 457 (1969):

"Except for the very limited area of the declaration 'under the penalties of perjury,' there can be no conviction of this offense unless a lawful oath or affirmation had been duly administered to the defendant by one authorized to do so, and there can be no such authority unless the particular oath or affirmation is one required or authorized by law. Thus, at a time when a party could not lawfully be sworn as a witness he could not commit perjury if improperly so sworn; if the law expressly excludes the oath of an applicant upon a certain point he cannot commit perjury as to that

point; if there is no authority for a sworn pleading, the unauthorized addition of an oath thereto will not support a charge of this offense; and perjury cannot be predicated upon a false statement in an affidavit required by some board or officer if there is no law authorizing such an affidavit." (Footnotes omitted).

In *Wade*, we had the issue of whether a chief deputy clerk was a proper person to administer an oath to a witness at a probation revocation hearing. We concluded the deputy clerk was an authorized person to administer an oath and stated in Syllabus Point 1:

"A 'lawfully administered' oath or affirmation is an essential element of the crimes of perjury, *W.Va.Code*, 61–5–1 [1931], and false swearing, *W.Va.Code*, 61–5–2 [1931]; and a 'lawfully administered' oath or affirmation, as that phrase is used in *W.Va.Code*, 61–5–1 [1931], and *W.Va.Code*, 61–5–2 [1931], is *an oath or affirmation authorized by law* and taken before or administered by a tribunal, officer or person authorized by law to administer such oaths or affirmations." (Emphasis added).

It is clear from our decision in *Wade* that in order to support a charge of false swearing under W.Va.Code, 61–5–2, the person administering the oath or affirmation must be qualified to do so and the sworn testimony, document, or affidavit must be authorized by law to be rendered under an oath or affirmation. Other courts have similarly concluded false swearing charges cannot be maintained where the oath or affirmation is not required or au-

---

7. In *Mars v. Luff,* 155 W.Va. 651, 186 S.E.2d 768, 52 A.L.R.3d 839 (1972), indigent litigants sought a writ of mandamus against a circuit court judge and clerk who had refused to permit the filing of their divorce actions. The respondents' principal defense was that the petitioners could afford to pay the filing costs. We rejected this proposition pointing out that the indigency statute, W.Va.Code, 59–2–1, requires the filing of an affidavit. Without any citation or discussion, we then said, 155 W.Va. at 655, 186 S.E.2d at 770, "if the complainant swears falsely in such affidavit he subsequently can be prosecuted for the offense of false swearing." This statement was dictum, but is accurate since W.Va.Code,

59–2–1, expressly provides that false swearing in the affidavit constitutes the crime of false swearing.

In *Wasemann v. Roman,* 153 W.Va. 320, 168 S.E.2d 548 (1969), a police officer appealed his dismissal. The officer was fired because in one sworn affidavit filed in response to a bastardy warrant, he denied being the father of the child in question while in an earlier sworn affidavit he claimed to be the father. Under these facts, we simply noted that on one of these occasions the officer had committed false swearing in violation of W.Va.Code, 61–5–2, and affirmed the dismissal.

thorized by law. *E.g., State v. Warren,* 24 Ariz.App. 380, 539 P.2d 184 (1975); *People v. White,* 122 Cal.App.2d 551, 265 P.2d 115 (1954); *People v. Watson,* 85 Ill.App.3d 649, 40 Ill.Dec. 781, 406 N.E.2d 1148 (1980); *People v. Emmons,* 11 Mich.App. 660, 162 N.W.2d 117 (1968); *Licata v. State,* 99 Nev. 331, 661 P.2d 1306 (1983) (per curiam); *Ex Parte Pack,* 51 Okla.Crim. 277, 1 P.2d 817 (1931); *In re Parmes,* 59 Tenn.App. 69, 437 S.W.2d 532 (1968); *Mendez v. Commonwealth,* 220 Va. 97, 255 S.E.2d 533 (1979); *State v. Devitt,* 82 Wis.2d 262, 262 N.W.2d 73 (1978); *cf. Dunn v. United States,* 442 U.S. 100, 99 S.Ct. 2190, 60 L.Ed.2d 743 (1979).

■ When we consider the false swearing indictment in light of this principle, we conclude it is void as a matter of law. The sworn affidavit signed by the relator was filed pursuant to Rule XVII of our Trial Court Rules, which provides in relevant part:

"A. Procedure upon the filing of a motion for disqualification:

"(1) In any proceeding, except an injunction or a summary contempt proceeding, a written motion for disqualification of a judge may be filed. The motion shall be verified and shall state the facts and reasons for disqualification and shall be accompanied by a certificate of counsel of record stating it is made in good faith and has evidence to support the same."

Under this rule, if a party desires to move for the disqualification of a judge, he must file a verified motion stating "the facts and reasons for disqualification," [8] and accompany the motion with a certificate of counsel which states "it is made in good faith and has evidence to support the same." There is no requirement under Rule XVII that the certificate of counsel be sworn before a notary public.

The language of Rule XVII with regard to the certificate of counsel is purely conclusory in effect calling for an opinion of counsel that the disqualification motion is made in good faith and that he "has evi-

dence to support the same." Customarily, a certificate is:

"A written assurance, or official representation, that some act has or has not been done, or some event occurred, or some legal formality has been complied with.... A 'certificate' by a public officer is a statement written and signed, but not necessarily sworn to, which is by law made evidence of the truth of the facts stated for all or for certain purposes." Black's Law Dictionary 205 (5th ed. 1979).

In the present case, although the relator swore to the certificate, this was not required nor authorized by law and, consequently, was merely gratuitous. Therefore, since the certificate of counsel under Rule XVII of our Trial Court Rules is not required to be sworn before a notary public, we conclude no charge of false swearing could be made under these facts.

For the foregoing reasons, a writ of prohibition is issued prohibiting any further prosecution of the relator on the false swearing charges based upon the certificate of counsel signed and sworn to before a notary public by the relator.

Writ Awarded.

Justice McGRAW did not participate in this matter and he reserves the right to concur, dissent, decline to participate or disqualify himself as Constitutional duty requires, after final advice under Rule II(K) of the Rules of Procedure for the Handling of Complaints Against Justices, Judges and Magistrates upon his "Petition for Rendition of Advisory Opinion." The cause for the petition and appeal being, respectively, the "Respondent's Request to Refrain from Participating in Argument, Deliberation, or Disposition of this Proceeding," and the respondent's "Post-Submission Supplemental Motion to Recuse."

McGRAW, Justice:

For reasons set forth in the following order, entered by this Court on July 23,

---

8. In this case, the facts set out in the motion were verified by one of the party plaintiffs.

1987, I did not participate in this proceeding.

ORDER

In the Matter of:

Justice Darrell V. McGraw, Jr.

No. 17272.

July 23, 1987

PER CURIAM.

In this proceeding, we are asked to determine whether the West Virginia Judicial Hearing Board (Board) has been granted authority to review the advisory opinions of the Judicial Investigation Commission (Commission). We conclude that the Board lacks such reviewing authority and, therefore, we affirm its decision refusing to entertain an appeal.

This proceeding was instituted by the Honorable Darrell V. McGraw, Jr., Justice of the West Virginia Supreme Court of Appeals, who filed a petition with the Commission seeking an advisory opinion as to whether a recusal motion challenging his impartiality to sit on a pending case was valid. The Commission by letter opinion promptly expressed its view that Canon 3(C) of the Judicial Code of Ethics did not necessarily mandate his disqualification after a review of pertinent legal authorities and the facts then before it.

Shortly thereafter, the party who had sought to disqualify Justice McGraw from sitting in a pending proceeding filed a supplemental motion to recuse based on allegedly newly-discovered evidence. Thereafter, the Chairman of the Commission advised that the Commission had not been able to find any reason justifying modification or amendment of its advisory opinion. Meanwhile, Justice McGraw had filed a petition with the Board requesting it to affirm the Commission's advisory opinion. The Board unanimously ruled that it had no authority to review advisory opinions of the Commission, and Justice McGraw then sought an ultimate resolution of this issue here.

The Rules of Procedure for the Handling of Complaints Against Justices, Judges and Magistrates (Rules of Procedure) vests the Commission with the authority to issue advisory opinions upon the request of any judicial officer or the administrative director of this Court under Rule II(K). The language of Section (K), which is relevant to the issue presented here, states:

"A Judge or the Administrative Director of Courts may by written request to the Commission seek an opinion as to whether certain specified actions contemplated or proposed to be taken may constitute a violation of the Judicial Code of Ethics, Code of Regulations or Standards of Conduct and Performances for Justices, Judges and Magistrates. The Commission, after consultation with Counsel, may render to the Judge in writing such opinion as it may deem appropriate in the premises. Any such opinion rendered by the Commission shall be admissible in any disciplinary proceeding involving the propriety of such conduct by the Judge to whom the opinion is directed. Such opinions shall not be binding on the Supreme Court. The Commission may, at any time including as a result of disciplinary proceedings, modify or amend any advisory opinion: Provided, that no such modification or amendment shall be applied retroactively in any such disciplinary proceedings."

Section (K) by its terms permits advisory opinions to be admitted in subsequent disciplinary proceedings brought against a judicial officer. It also explicitly indicates that such opinions are not binding on this Court. More to the point, Section (K) does not provide for review of advisory opinions. The purpose of Section (K) was to establish a mechanism by which judicial officers in this State and this Court's administrative director could obtain guidance upon legitimate questions that often arise as to whether a particular action or course of conduct would violate the broad language contained in the Judicial Code of Ethics.

The Board's role under Rule III of the Rules of Procedure is to hear complaints filed by the Commission based upon a finding of probable cause to believe an ethical

violation has occurred. The Board is empowered to conduct a full evidentiary hearing and then to make recommendations to this Court as to the appropriate disposition of such charges. Rule III does not authorize the Board to review advisory opinions.

We believe the plain and unambiguous language of Rule II(K) reposes the exclusive right in the Commission to issue an advisory ethical opinion. Our customary rule is that where the language of a statute or regulation is clear and unambiguous, the plain meaning is to be accepted without resorting to the rules of interpretation. Syllabus Point 2, *State ex rel. Underwood v. Silverstein*, 167 W.Va. 121, 278 S.E.2d 886 (1981); Syllabus Point 2, *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968).

It is, therefore, ORDERED that the decision of the Board is affirmed.

Chief Justice McGRAW did not participate in the consideration and decision of this case.